## Duff v. Knott County.

(Decided March 17, 1931.)

A. F. BYRD and WALLACE MUIR, and SCOTT E. DUFF for appellant.

JOHN S. CARROLL and CARROLL & CARROLL, and J. E. PERKINS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Knott county recovered a judgment for $7,700 against C. E. Duff, and he has prosecuted an appeal for the purpose of procuring its reversal. The judgment was rendered upon the pleadings, and the facts alleged require recitation in order that the questions presented may be understood.

The people of Knott county voted in favor of a bond issue of $200,000 for road and bridge purposes. The first effort to sell the bonds was unsuccessful. On a second call for bids, Duff submitted a bid and condition consisting of two separate sheets.

The first sheet was an offer to pay par for the bonds plus a premium of $100. It was dated, signed, and appeared upon its face to be complete. The acceptance and approval of the fiscal court was indorsed thereon and signed by the county judge and the county clerk. Annexed to the bid and stated to be a condition avoiding it if not also accepted was a proposition that the fiscal court should allow the bidder $7,700 to cover attorney fees, cost of blank bonds, and other expenses in connection with the transaction, to be paid in New York, funds simultaneously with the delivery of the bonds. It provided further that Duff was to furnish for the county a bank acceptable to it that would carry its funds during the construction of the roads and pay 4 per cent. interest on daily balances, to be calculated according to a plan stated in the proposition. Duff agreed also to pay the expenses of a committee of the fiscal court, with power to enter into a contract, to accompany him to the banks. He further agreed to furnish, at his own expense, a complete transcript of the proceedings. The second sheet was likewise indorsed, accepted, and approved by the fiscal court and signed by the county judge and clerk. The bid or first sheet, contained no reference to the condition contained in the second sheet, but the latter referred to the first sheet as "my bid hereto attached . . : conditioned as follows: one part being void without the other, is that you are to allow me the sum of $7,700 for attorney fees, blank bonds and other expenses in connection with the transaction." On the same day the bid is dated, the fiscal court entered an order to the effect "that the bid of C. E. Duff be accepted," and that order is signed by the county judge and four justices, constituting the entire fiscal court, with the exception of one justice, who voted to accept the bid of Duff but did not sign the order. No reference to the condition annexed to the bid was made by the order.

Within a month, however, an order was entered by the fiscal court to the effect that "H. A. Smith" be allowed the sum of $7,700 for legal and professional services in connection with the $200,000 bond issue, which

sum was ordered to be paid by the county treasurer from the road and bridge funds of the county.

Shortly thereafter the fiscal court, then composed of a new set of magistrates and another county judge, entered an order directing a suit to be brought to recover the $7,700. The petition, filed on April 1, 1926, alleged that the "H. A. Smith" mentioned in the order was not a real person, but a fictitious name, and that the money was appropriated for the benefit of the defendant, Duff, who had received and accepted it. It was alleged in the petition that there was no consideration for the payment or appropriation of the money, and that it was paid to Duff without right or authority of law.

After some preliminary motions were disposed of Duff filed an answer admitting that he had received the money, but justifying it upon several grounds:

(1) He averred that it was the duty of the fiscal court to pay for the printing of the bonds, for the opinion of an attorney acceptable to bond buyers, respecting the legality thereof, and for incidental expenses in connection with the sale of the bonds, and it had the right to pay the buyer of the bonds an amount sufficient to provide things the fiscal court was authorized to furnish. Duff denied any knowledge of the order respecting the fictitious appropriation to "H. A. Smith," and averred that the money was paid to him in accordance with the written conditions of his bid.

(2) He alleged further that he was not a real bidder for the bonds, or the buyer thereof, but acted merely as an agent of the fiscal court in negotiating a sale of the bonds, and in securing banking facilities, for which services he was entitled to compensation, together with reimbursement for expenses, all of which the fiscal court was authorized to pay, and undertook to provide in the manner mentioned.

(3) He insisted finally that the county could not rescind the transaction in part and maintain it in part, and, having accepted, kept, and used the bond money and services of appellant, it could not repudiate the contract and recover the payment. A further contention is made that the whole transaction was ratified after the event, and that such ratification embraced the payment to Duff, and estopped the county from reclaiming the money paid to Duff as an integral part of the deal.

Kentucky Statutes, sec. 4307, provides that bonds of the character in question shall be sold, "at not less than

par value and accrued interest." The limitation refers to the selling price of the bonds, and does not mean that the fiscal court may not do such things or incur such expense, as may be customary and reasonable in preparing, issuing, and selling the bonds. The power to sell implies the right to do all the things necessary to bring about a sale. Such implied power may, under some circumstances, include the right to employ brokers and to pay them a reasonable commission to effect the sale of county road bonds. Crick v. Rash, 190 Ky. 820, 229 S. W. 63.

But that question is not the one presented by the allegations of the answer, as amended. The fiscal court of Knott county did not purport to employ or pay an agent or broker. No such order of the court is exhibited, and the court is authorized by law to speak only by its orders, duly authenticated. Kentucky Statutes, secs. 1838, 1842, 1843; Fox v. Lantrip, 162 Ky. 178, 172 S. W. 133; Riddell v. Boone County, 183 Ky. 77, 208 S. W. 323; McKechnie v. Canada, 198 Ky. 807, 250 S. W. 111; Conrad v. Pendleton County, 209 Ky. 526, 273 S. W. 57; Vanzant v. Watson, 230 Ky. 316, 19 S. W. (2d) 994.

The asserted agency is incompatible with the relationship of seller and buyer of bonds manifested by the orders of the court, and the other written documents. 2 C. J. p. 712, sec. 367; Kilbourn v. Sunderland, 130 U. S. 505, 9 S. Ct. 594, 32 L. Ed. 1005; Donovan v. Campion (C. C. A.) 85 F. 71; Ferguson v. Gooch, 94 Va. 1, 26 S. E. 397, 40 L. R. A. 234.

"The true test is whether the agent owes fidelity to each party to the contract, and has a discretion to exercise for either party, in a matter where there is a conflict of interest between the two principals, so that a strain might be placed upon the probity of the agent, and he might be under temptation to betray or neglect the interests of one of the parties." Manchester Fire Ins. Co. v. Insurance Co. of Illinois, 91 Ill. App. 609.

The relation of buyer and seller in its very nature contradicts the theory of agency, which implies trust, confidence, and fidelity to the interests of the principal. In re Whelen's Appeal, 108 Pa. 165, 1 A. 88. It is plain, therefore, that the answer as amended presented no defense for Duff in so far as the alleged agency was concerned.

It is true that a fiscal court may ratify and confirm any contract it might have made in the first instance. Estill County v. Wallace, 219 Ky. 174, 292 S. W. 816; Commonwealth v. Scarborough, 148 Ky. 561, 147 S. W. 31; Flowers v. Logan County, 138 Ky. 59, 127 S. W. 512, 137 Am. St. Rep. 347; J. I. Case Threshing Machine Co. v. Com., 177 Ky. 454, 197 S. W. 940.

But a ratification, to be effective, as will be seen from the cases cited, must be made in the same manner and with the same formality that is required to bind the county in entering into a contract within its authority. The ratification must be by an order unequivocal in character and duly entered and signed in the manner directed by the statutes governing the action of fiscal courts. No such record is pleaded. The order appropriating the $7,700 is made to a fictitious person, contains no reference to Mr. Duff, and he does not rely upon it in any respect. The sole basis for the payment to Duff was the conditional contract annexed to his bid for the bonds, and, so far as shown, that instrument is not mentioned or described in any order of the fiscal court.

In so far as a rescission is concerned, it is sufficient to say that neither party sought such relief. The county rested its right to a recovery upon the ground that the payment to Duff was not authorized by law, or any valid orders of the fiscal court, whilst Duff justifies his retention of the money upon the ground that its payment to him was provided for by the conditions accompanying his bid for the purchase of the bonds.

Thus we are brought to the vital question presented by the pleadings whether the fiscal court, in concluding a sale of road bonds under section 4307, Kentucky Statutes, may allow the buyer a deduction from the purchase price to cover the cost of printing the bonds, to procure an opinion of counsel, and to provide for the payment of necessary incidental expenses.

The statute forbids a sale of the bonds for less than the par value plus the interest accrued thereon at the time of the sale. It means that the buyer must pay not less than the amount specified, and that the county shall receive not less than that sum. The provision of the statute to the effect that the proceeds of the bonds shall be used solely and alone for the construction of roads and bridges of the type contemplated, does not preclude the county from using a reasonable portion of the fund for the payment of expenses necessarily incurred in pre-

paring, printing, and selling the bonds. Crick v. Rash, 190 Ky. 820, 229 S. W. 63.

It is argued for the appellant that the authority to pay such essential costs carries with it the power to allow a reasonable sum in lieu thereof, and to allot it to the purchaser to reimburse him for performing for the county the duties thus delegated to the buyer. He relies upon Miller v. Park City, 126 Tenn. 427, 150 S. W. 90, Ann. Cas. 1913E, 83; Park v. Rural Special School District, 173 Ark. 892, 293 S. W. 1035; Church v. Hadley, 240 Mo. 680, 145 S. W. 8, 39 L. R. A. (N. S.) 248; Davis v. San Antonio (Tex. Civ. App.) 160 S. W. 1161; Armstrong v. Village of Ft. Edward, 159 N. Y. 315, 53 N. E. 1116; Town of Manitou v. First National Bank, 37 Colo, 344, 86 P. 75; and State v. West Duluth Land Co., 75 Minn. 456, 78 N. W. 115.

Each of the cases cited, except the ones from Tennessee and Minnesota, involved the right of a municipality to employ or to pay a broker for effecting a sale of bonds. We need not examine them, as the point may be conceded, since the question is concluded by the opinion of this court in the case of Crick v. Rash, 190 Ky. 820, 229 S. W. 63. The Tennessee case of Miller v. Park City, 126 Tenn. 427, 150 S. W. 90, Ann. Cas. 1913E, 83, involved a suit by citizens against the city to enjoin it from making a sale of refunding bonds for street improvements. The ground of the action was that an illegal condition had been annexed to the sale of the bonds by which they had been sold for less than par. The statute in that state required the bonds to be sold for not less than par. The offer submitted by the purchaser was on a condition for the allowance of a sum to pay an attorney fee and other expenses. The sale had been concluded, the bonds had been delivered, the purchaser was not a party to the action, and it was impossible in that case to grant any relief against it. The sole question the court could decide on the record was whether a personal judgment should be rendered against the committee of the city council that negotiated the sale of the bonds. The court held that the committee acted in entire good faith, and incurred no personal liability. The authority of the case, even to the limited extent of its application, is greatly impaired by the cogent criticism administered to it by the Supreme Court of Oregon in the case of Hattrem-Nelson & Co. v. Salmon River-Grande R. H. Imp. Dist., 132 Or. 297, 285 P. 231.

The Minnesota case of State v. West Duluth Land Co., 75 Minn. 456, 78 N. W. 115, 117, presented a proceeding to prevent a tax levy to provide a fund for the payment of outstanding bonds. The court said:

"The bonds now under consideration, $140,000 in amount, were turned over to a broker for sale under a written contract with the board of county commissioners. In this contract it was stipulated that the broker should pay for lithographing and printing the blank bonds, for legal advice and services, and all other expenses incident to a sale, and for which and as compensation in full, he was to receive the sum of $14,000—10 per cent. of the face value of the bonds sold. On these facts we are asked to hold that there was a plain violation of section 4 and that the bonds are void. There might be cases where the facts would very conclusively show that an agreed compensation of 10 per cent. for the sale of bonds was a palpable evasion of such a section but we have no such case before us. We cannot say, as a matter of law, that under the conditions of this contract there was a violation of section 4, which forbids a sale of the bonds at less than par value. We hold, as to the third point that, in so far as the question is raised by the answer herein, the bonds issued under the provisions of laws 1895, c. 289, are valid, and the tax levy for the payment of principal and interest of the same may be collected in these proceedings."

It will be seen that the cases cited afford no substantial authority, for the proposition now presented to us. On the other hand, the authorities against the proposition are emphatic and abundant. Whelen's Appeal 108 Pa. 162, 1 A. 88, 91; Bay City v. Lumberman's State Bank, 193 Mich. 533, 160 N. W. 425; Hunt v. Fawcett, 8 Wash. 396, 36 P. 318; Spear v. City of Bremerton, 90 Wash. 507, 156 P. 825; Uhler v. Olympia, 87 Wash. 1, 151 P. 117, 152 P. 998; Village of Fort Edward v. Fish, 156 N. Y. 364, 50 N. E. 973; Hattrem-Nelson & Co. v. Salmon River-Grande, etc., 132 Or. 297, 285 P. 231.

Nor can the proposition be supported by sound reasoning. The requirements of the law that the bonds shall be sold for not less than par value is mandatory, and admits of no evasion. The admitted power of the county to employ brokers and to pay them for their ser-

vices in negotiating a sale of bonds does not permit
the creation of incompatible relationships. If an agent
in such cases is to be employed, he must be a representa-
tive of the county, charged with the duty of disinterested
service and the obligation of absolute loyalty to his prin-
cipal. The seller and buyer of bonds represent conflict-
ing interests, and stand in adversary relations. The
Pennsylvania court thus adverted to the subject:

> "A clear distinction exists between an agency
> to sell bonds for the city and a contract to buy them
> of the city. The former is a transaction which is to
> give the city the full benefit of the sum for which
> they may be sold, less the reasonable compensation
> agreed to be paid for effecting the sale.
>
> "The latter wholly deprives the city of the ex-
> cess above par for which the appellants may sell
> them, however large it may be. In the one case the
> appellants are bound to act in good faith, and to
> endeavor to obtain for the city the highest market
> value for its bonds. In the other, the bonds are to
> become the property of the appellants, so they may
> dispose of them as they see proper, and enjoy the
> proceeds thereof.
>
> "The relation between agent and principal is so
> essentially different from that which exists between
> vendee and vendor that it is useless to further elab-
> orate the distinction." Whelen's Appeal, supra.

The law contemplates and requires that all bidders
for bonds sold at public sale shall be upon a basis of
equality. State Highway Comm. v. Veiling, 230 Ky. 381,
19 S. W. (2d) 967. If all the bidders should be required
to furnish the printed bonds, and obtain for themselves
an opinion of counsel as to their validity, equality would
result. If the fiscal court should elect to obtain an opin-
ion of counsel, and to provide for the printing of the
bonds, in advance of the sale, the bidders then would be
competing on equal terms. But if a fiscal court permit-
ted one bidder to stipulate that a fixed amount should be
paid to him, even though that amount should not exceed
what the fiscal court might properly have paid to a duly
selected broker, an inequality in the bidding would nec-
essarily ensue. In other words, if the fiscal court had
desired to pay for blank bonds, commissions to brokers,
and legal opinions, it was at liberty to do so, provided
it kept within the limitations of the law respecting its

powers. But when it failed to do so, and the bonds were sold at a competitive bidding, or otherwise, it could not make an allowance to the successful bidder for any purpose, when the result would be to bring the purchase price of the bonds below the minimum amount prescribed by law.

The law forbids a discount, and, no matter what form it may assume, it must be denied. 28 Cyc. 1598; 44 C. J. sec. 4188, p. 1216.

Public policy prevents the sanction of any device or contrivance for the subversion of the law, and requires the courts to discountenance any practice that would tempt the county officials to evade the requirements, or that might enable them to escape the obligations of the statutes governing the conduct of public business. The facts pleaded did not authorize the committee of the fiscal court to pay the money to Duff for any purpose, and he had no right to retain it. Rowe v. Alexander, 156 Ky. 507, 161 S. W. 508; McDonald v. Franklin County, 125 Ky. 205, 100 S. W. 861. No subterfuge can justify a sale of road bonds for less than the par value and accrued interest, for that would violate the mandatory provision of the statute regulating their sale.

In so far as it is sought to hold the county liable for valuable services rendered by Duff as agent, it is sufficient to say that he was not employed as an agent. He was a bidder for the bonds, and his position as such was incompatible with the duties of an agent for the seller. The records are not impeached, and they present Duff in the character of a bidder for the bonds. A claim by Duff acting in that capacity that the county is liable to him upon an implied contract to pay the reasonable value of his services, is wholly insupportable. The reason such a subterfuge is illegal is strongly stated by Judge Sanborn in Donovan v. Campion (C. C. A.) 85 F. 71, 73:

"It inaugurates so dangerous a conflict between duty and self-interest to allow the agent of a vendor to become interested as the purchaser, or the agent of a purchaser, in the subject-matter of his agency, that the law wisely and peremptorily prohibits it."

In Estill County v. Wallace, 219 Ky. 174, 292 S. W. 816, the court upheld a payment made to Wallace for services in settling various claims against the county

arising out of a railroad bond issue. No order employing Wallace had been made, but, after the services were concluded, a motion was made for an allowance, and the fiscal court entered an order reciting that the services had been rendered, and providing payment therefor. A voucher was issued, and the treasurer paid Wallace. The county then brought a suit to recover the money on the ground that it could not be held liable on an implied contract. The fiscal court had authority to pay for services such as Wallace had rendered, and, when such authority exists, the subsequent approval by the fiscal court is valid. But, in case no authority of law exists for the payment, an attempted approval is void and money paid thereunder may be recovered. This court held that the fiscal court had power to employ Wallace in the first instance, and equal power to ratify the agency assumed, which included power to pay for the services. But it was done in that instance by a formal, unambiguous, and unequivocal order, and Wallace occupied no adversary attitude that disqualified him for the agency. Here the court did not employ Duff, and he was not working for the county, but for himself. The fiscal court was representing the county, and Duff appeared in the attitude of a bidder for the bonds. His work may have been a benefit incidentally to the county, but it was performed primarily in the interests of himself. No order by the fiscal court can be considered as a ratification of any agency of Duff. The appropriation to H. A. Smith could have no such effect, since Duff denies in his answer that the order was adopted for his use or benefit. If invoked for the purpose indicated, it would be much impaired by the fact that it was made in a fictitious name, and was not designed to validate unauthorized action that had proven beneficial to the county. On its face it merely purported to pay for legal and professional services. Mr. Duff pleads that he gave the county valuable advice and service, but the pleading shows that the advice and service were given under circumstances precluding any claim to compensation therefor.

Thus the court is brought to the conclusion that the rulings of the circuit court disallowing the various defenses interposed by the defendant were in accordance with the law.

The judgment is affirmed.