## The Governor et al. v. Wolfe County.

June 19, 1942.

Hubert Meredith, Attorney General, A. E. Funk, and Vincent Goodlett, Assistant Attorneys General, for appellant.

William H. Crutcher for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Prior to July 1, 1941, Wolfe County had outstanding $37,000 road and bridge bonds, of an issue of $50,000, bearing 5% interest, theretofore authorized by a vote; the finances of the county were such that it could not meet payments of some maturing and matured bonds and accrued interest. It was then proposed by the county to refund these bonds, to bear interest at 4%. Prior to the passage of the resolution the county employed an agent to work out and submit a refunding plan, who later presented to the court alternative plans for the refunding, and the court accepted the 4% plan, which had been agreed to by the holders of outstanding bonds. This plan was submitted to the state finance officer, who approved it in so far as the validity of the issue was concerned, but disapproved it in respect of three points. In the fiscal court's resolution it had been provided:

That the county should pay (a) to the agent compensation for services and expenses in perfecting the plan; (b) the costs of publishing call notices, if and when the county should elect to exercise call option, and (c) service charges to some designated agency for handling the payments of the bonds at maturity, and interest coupons at due dates.

At this point it may be noted that in conformity with our opinion in Morgan County v. Governor, 288 Ky. 532, 156 S. W. (2d) 498, the bondholders were upon notice of the hearings before the finance officer, and answered in the circuit court. The finance officer disapproved the items on the ground that as Section 157a of the Constitution authorized the voting of an aid tax solely for the purpose of paying the interest upon and retiring the bonds issued under its provisions, the county would violate that section of the Constitution by providing for payment of the three items named above.

However, on the practical side the officer suggested that the 4% alternative plan submitted would result in a saving to the county in a reduction of 1% in interest rate, which would, in three years from the issuing date,

equal the amount of the agent's fee, thus working a substantial saving to the taxpayers, while refunding under the alternative 5% (without charges) would result in no saving. The officer ''reluctantly reached his expressed conclusion, since the alternative plan would be financially disadvantageous to the county.''

As is provided by Section 938q-4, Kentucky Statutes 1939 Supplement, the county appealed to the Debt Commission, which upheld the officer's ruling, thence to the Franklin circuit court. Upon submission the court overruled the Debt Commission's conclusions on the points at issue. From this order the Commission appeals, presenting here the sole questions manifested above, it being agreed that there is no dispute as to basic validity of the issue.

Appellee contends, as is shown by the record, that the county at the time of the order of the fiscal court owed the bondholders on past-due interest and matured bonds, with several thousand dollars in the sinking fund, which the bondholders could compel the county to pay immediately; that as a practical matter the bondholders agreed that the county should pay what is termed ''their money'' to the refinancing agent, at the same time agreeing to a lower rate of interest over a longer life of the bonds. This, says appellee, is no more than a voluntary offer on the bondholders' part to reduce the amount of their claim, and is not contrary to Sections 157a or 180 of the Constitution.

The attorney general agrees that under the authority of Crick v. Rash, 190 Ky. 820, 229 S. W. 63, and Duff v. Knott County, 238 Ky. 71, 36 S. W. (2d) 870, the county might use a reasonable portion of the proceeds of bond sales for the purpose of paying expenses necessarily incurred in preparing, printing and selling bonds, but says that these cases did not involve the provisions of the section of the Constitution adverted to above. Whether the provisions of the Constitution were mentioned or considered, they were in effect at the time the opinions were written.

In the Crick case we did mention the fact that Section 4307, Kentucky Statutes, provided ''that all the money raised by the sale of bonds shall be used solely and alone for the building construction, or reconstruction of roads, * * *,'' which in terms comports with

the provisions of Sections 157a, 180 of the Constitution. The contention was in that case that payment of brokerage fees would run counter to the section of the statute supra. However, we took the position that to give it such strict and literal interpretation would deprive the fiscal court of the authority to incur such expenses as are necessary in order to effect the sale of bonds, and which are incurred in the general scheme and plan and purpose for which the issue was voted. Rather we were inclined to hold that it was the intention of the legislature to restrain the fiscal court from applying the proceeds of the bonds to any other purpose than that for which they were voted. [190 Ky. 820, 229 S. W. 66].

> "To hold otherwise would prevent the fiscal court from paying the expenses of the election, the court costs and fees incident to calling it and for making the necessary orders carrying out the purpose of the election, the printing and engraving of the bonds, and other absolutely essential and necessary acts for the acceptance by the voters of the rights and privileges conferred by the Legislature in authorizing the election. Any expenses, therefore, coming within the general class referred to may be legally paid by the fiscal court out of the gross proceeds of the sale of the bonds."

We pointed out in the Crick case that authority to pay a reasonable fee should only be exercised after a bona fide effort to sell the bonds in the customary manner had failed. In the Duff case, supra, we denied payment of a brokerage fee because of certain unsavory conditions appearing in the transaction. We made reference to the Crick case and to Section 4307, Kentucky Statutes, as therein construed, and viewed that case [238 Ky. 71, 36 S. W. (2d) 871] as holding that the "court may * * * incur such expense, as may be customary and reasonable in preparing, issuing, and selling the bonds. The power to sell implies the right to do all the things necessary to bring about a sale. Such implied power may, under some circumstances, include the right to employ brokers and to pay them a reasonable commission to effect the sale of county road bonds."

As we read these cases it is permissible, under certain circumstances, which we take to mean, as expressed in the Crick case, a failure after bona fide effort to sell the proposed bonds, to allow payment out of the proceeds

of a reasonable brokerage commission. Here there is no specific charge for brokerage commission, though it may have been anticipated in the contract. Nor are the expenses to be paid from the sale of the bonds, though after all we can see little practical difference as to which pocket the expenses come from.

If such expense is allowable for services rendered by a broker in selling the bonds, "under certain circumstances," it would be reasonable to conclude that the fiscal court could legally contract with some agency to bring together the bondholders and persuade them to exchange their 5% bonds for others bearing a less rate, and running over a longer period, and to pay the agency to "prepare and file application for approval of" a refunding plan; to work out the plans, to "prepare and deliver all legal papers necessary to the consummation of the plan," the fee for services to be paid from the road and bridge sinking fund, and not here from proceeds of sale, since the plan provides for no sale. It may be noted that the levying order of the fiscal court provided for the payment of one of the probable items of expense.

There is no question here of unreasonable charge for services rendered by the agency to and accepted by the county, and none was presented below, the only question being one of authority, and it is noted that while the county was the party seeking relief, there was also before the court representative taxpayer who asked that the whole plan of refunding be approved, as did the bondholders, or a representative class. Since neither party makes reference to Section 938q-6, Kentucky Statutes, 1939 Supplement, it may be assumed that they are conceding, or at least assuming, that it has no direct application. This section in substance provides that the "costs of advertising and any other authorized expenses incident to the sale of the county bonds shall be borne by the county," and in case of original issue only, be deducted from the proceeds, which authority did not exist when the opinions, supra, were rendered. The use of the word "only" would lead to the conclusion that in refunding, the county should pay but not deduct the expenses from the proceeds. The statute is silent as to payment when there is merely an exchange of new bonds for those outstanding.

It is made manifest by stipulation that the county

will, by the proposed exchange of bonds at the lower rate, effect an appreciable saving to the taxpayers, notwithstanding the payment of the expenses included in the above items. All parties agree that this is true. And since we have pointed out in the cases cited above, at least by giving construction to Section 4307, Kentucky Statutes, that necessary legitimate expenses may be paid from the proceeds of bond sales, we fail to see wherein Section 157a of the Constitution would be violated by the payment of the items of expense under consideration, which, as we read the record, are to all intents and purposes from the county's standpoint essential to a consummation of the proposed plan. Here the county could only succeed by agreement; not by force.

We are not to be understood as attempting to go further in applying the principles announced in a general way, and which should control in any given case, but as being applicable to the case in hand, measured by the facts presented to us by this record, where there is an exchange of securities by which the county becomes the beneficiary and which is not in any wise in detriment of any rights of or works injury to the taxpayers.

We are of the opinion that the judgment of the chancellor was correct, and having this view we must affirm the judgment.