**CINCINNATI, N. O. & T. P. RY. CO. v. CITY OF LEXINGTON.**

United States District Court
E. D. Kentucky.

Nov. 10, 1949.

914

Harbison, Kessinger, Lisle & Bush, Lexington, Ky., Ben. L. Kessinger, Lexington, Ky., Rufus Lisle, Lexington, Ky., Bradley & Bradley, Georgetown, Ky., for plaintiff.

Leer Buckley, Lexington, Ky., for defendant.

FORD, Chief Judge.

This is an action under 28 U.S.C.A. § 2201 .for a declaratory judgment to resolve a controversy between the parties as to whether the defendant, City of Lexington, a municipal corporation of the second class located in Fayette County Kentucky, is obligated to maintain and repair a certain bridge by which Virginia Avenue, a street of the city, passes over the tracks and right of way of the plaintiff, The Cincinnati, New Orleans & Texas Pacific Railway Company, at a point within the city limits.

Federal jurisdiction rests upon diversity of citizenship and the requisite value of the matter in controversy. 28 U.S.C.A. § 1332(a) (1).

By agreement of the parties, the case is submitted for judgment upon the pleadings and the facts shown by stipulation.

It appears that before the institution of this action, the parties recognized that substantial repairs to the bridge were necessary in order to maintain it in a reasonably safe condition for the use of the traveling public, but each party was of the opinion that it was the duty of the other to bear the expense of such repairs. In order to avoid the delay incident to securing judicial determination of the controversy, they entered into a written contract by the terms of which it was agreed that the plaintiff would make the necessary repairs to the bridge at a cost not to exceed $5,-280.95, without waiving or prejudicing its claim that it is the duty of the city to bear such expense. The contract further provided that in the event it should be finally judicially determined that the city is liable for such repairs or any part thereof, the city would reimburse the plaintiff accordingly.

The facts upon which the plaintiff rests its claim that the defendant is obligated to bear the entire expense of maintaining and repairing the bridge may be briefly stated as follows: Prior to August 1, 1906, the portion of Virginia Avenue (formerly known as Lottie Street) upon which the bridge here in question is located was in Fayette County outside of and adjacent to the Southern corporate limits of the City of Lexington, and at some time subsequent to June 18, 1885, a bridge was constructed at the expense of Fayette County at the intersection of the plaintiff's right of way with a public highway then known as Lottie Street (now Virginia Avenue) being the same intersection over which the present bridge stands. On June 18, 1885, an instrument of writing was executed by the plaintiff and one H. C. Funk, pursuant to which the above mentioned bridge was constructed. The writing is as follows:

"Cincinnati, New Orleans & Texas Pacific R'y. Co. (Cincinnati Southern R'y.)

"Revocable and Determinable License for Special Privileges.

"Whereas, H. C. Funk for Fayette Co. Ky., of Lexington, Ky., are desirous of erecting at the county's expense, a highway bridge crossing on lands controlled by The Cincinnati, New Orleans & Texas Pacific Railway Company..

"These Presents Witnesseth, That the said Railway Company have granted to H. C. Funk the following Revocable and Determinable License, with the privileges following, viz.:

"To erect and keep in repair a Highway Bridge south of Lexington and to have ingress, egress and regress to and from the same, for the purpose aforesaid, and to use the said Highway Bridge as a public crossing over and upon said Railway, said License being granted upon the following conditions, viz.:

"First, That said Highway Bridge shall be erected at such point and upon such plan as shall be approved by G. B. Nicholason or other Chief Engineer, for the time being, of said Railway Company, without cost to it.

"Second, That the rights and privileges hereby granted shall cease and determine upon Thirty (30)————; notice in writing being given by the General Manager of said Company.

"Third, That after notice has been given of the revocation of this License, by the General Manager of said Company, the said Highway Bridge shall be removed without any cost to said Company, within Ten (10) days after the date of the expiration of the said notice of revocation.

"Fourth, The said Highway Bridge shall be subject to all the rules and regulations made for similar structures and convenience by the General Manager of said Company, and to like control.

"And the said H. C. Funk hereby accepts this License upon the foregoing conditions and agrees as follows:

"First, That he will save and hold harmless the Trustees of The Cincinnati Southern Railway, and said Railway Company, from all damage that may arise from the destruction or injury of said Highway Bridge by fire, or from any cause whatever.

"Second, That if the said Highway Bridge is not removed within the period aforesaid, after the revocation of this License, then the same may be removed by said Company, or its agents, without any costs to the said Trustees or said Railway Company.

"Third, That he will keep the said Highway Bridge in proper condition and repair, and maintain the same until the revocation or other termination of this License, as hereinbefore provided.

"Fourth, That he will abide by and perform the said conditions and agreements, and that he will not evade or violate the same.

"Fifth, That the clear height between bottom of bridge and top of rail of track shall be not less than 19 feet and the clear distance between posts supporting bridge shall not be less than 18 feet if built of wood. If built of iron the clear height between bottom of bridge and top of rails shall not be less than 19 ft. and the span shall cover the entire right of way, the abutments being outside.

"In Witness Whereof, F. S. Bond, Pres't. of the said The Cincinnati, New Orleans & Texas Pacific Railway Company, thereunto duly authorized and H. C. Funk, for Fayette Co. Ky. have hereunto affixed their signatures in triplicate.

"(Signed) Frank S. Bond
Pres't of the Cincinnati, New Orleans and Texas Pacific Railway Company
(Signed) H. C. Funk

"Executed in triplicate in presence of
"(Signed) Harry L. Hoeffer."

On August 30, 1906, the City of Lexington passed an ordinance under which the territory embracing the bridge was annexed to the corporate limits of the City of Lexington, and thereafter on October 16, 1909 the city passed an ordinance pursuant to which it entered into a contract with the Central Kentucky Traction Company under the terms of which the traction company removed the original bridge and constructed a new one in its place and in consideration thereof the city granted the traction company the right to lay its tracks and operate its interurban railway over the newly constructed bridge. The contract further provided that the traction company should maintain the floor of the bridge between the rails of its tracks and

the remainder of the floor would be maintained by the city. Other parts of the bridge, including the abutments, were to be maintained at the equal expense of the traction company and the city. The plaintiff was not a party to this contract and neither the contract nor the city ordinance, pursuant to which it was executed, made any reference to the plaintiff's rights, duties or responsibilities in respect to the erection, maintenance or repair of the bridge.

Prior to the present controversy, which arose in 1948, no demand was ever made upon the plaintiff to bear any part of the expense in connection with the maintenance or repair of the original bridge or the present bridge, but such repairs as may have been necessary were made at the expense of the county, the city and the traction company. Many years ago the traction company removed its tracks from the bridge and passed out of existence as a corporation.

■ That the annexation by the city of Lexington of that portion of Fayette County which embraced the highway upon which the original bridge was located resulted in imposing upon the city whatever contractual obligation then lawfully subsisted as between the county and the plaintiff in respect to the maintenance and repair of the bridge is not controverted by the defendant.

Section 81.170(2) of Kentucky Revised Statutes, formerly Carroll's Kentucky Statutes § 3053, provides: "(2) Whenever any unincorporated territory or part of a city is annexed by a second-class city, the annexing city shall be liable for any indebtedness that is attached to or exists against the territory or part of a city by reason of the same being then or theretofore a part of any taxing district, and the annexing city shall assume the liability, so that after annexation the burden of taxation shall be uniform throughout the city."

The question remains, however, whether the facts presented upon this record are sufficient to show that, at the time of the annexation by the city, Fayette County was under a contractual obligation to the plaintiff to maintain and repair the bridge without cost to the plaintiff.

The Kentucky Court of Appeals has many times stated the indispensable prerequisites to the establishment of a contractual obligation of a county.

The case of Holbrook v. Letcher County, 223 Ky. 597, 600, 4 S.W.2d 382, 383, involved the question as to whether the allegations of the plaintiff's petition were sufficient to establish a contractual obligation on the part of the county to keep an old road open in consideration of a grant of land for a new road. The Court said: "It must not be overlooked that a county cannot contract, except through its fiscal court, which must act as a body, and speak through its records. Riddell v. Boone County, 183 Ky. 77, 208 S.W. 323. Unless previously authorized, or their action be approved and ratified, by an order of the fiscal court sitting as a body, the individual members of the fiscal court, whether acting by themselves or in conjunction with other county officials, have no power to make a contract that will bind the county. For aught that appears in the petition as amended, there was never any order of the fiscal court sitting as a body authorizing the making of the oral agreement, or ratifying the agreement after it was made. In the circumstances the alleged agreement to keep the old county road open, and give appellant a connection to the new highway, was not binding on the county, and the trial court did not err in sustaining the demurrer to the petition as amended."

In Leslie County v. Keith, 227 Ky. 663, 664, 13 S.W.2d 1012, 1013, the Court dealt with a claim asserted against the county under an alleged contract claimed to have been made on behalf of the county by certain individual members of the fiscal court. In denying the claim as a contractual obligation of the county, the Court said:

" * * * County governments never become indebted by implication, and the county cannot be held responsible for a claim without its first being shown that there was a legal obligation to pay it. Wortham v. Grayson County Court, 13 Bush (76 Ky.) 53; Mitchell v. Henry

County, 124 Ky. 833, 100 S.W. 220, 30 Ky. Law Rep. 1051.

"The only contention made by the appellee that the county, through its fiscal court, directed these services to be rendered, is that individual magistrates told him to do it. The fiscal court can only act as a body when it is in session for the purpose of taking action. Every person who deals with the county is required to take notice of the law, and he must know the extent of the authority of the county in contracting with him. A county can contract only in the manner and by the persons and for the purposes expressly provided by statute. Perry County v. Engle, 116 Ky. 594, 76 S.W. 382, 25 Ky.Law Rep 813. A person dealing with the fiscal court must look to the orders of that court, and not to the oral expressions of individual members of the court. It can speak only through its orders. McKechnie et al. v. Canada, 198 Ky. 807, 250 S.W. 111."

■ It seems clear that the mere fact of the execution of a paper by an individual purporting to act for and on behalf of the county in assuming such duties and obligations as those here claimed by plaintiff, without any showing of record that the Fiscal Court of the County, sitting as a body, authorized the execution of the document or agreed to the conditions thereof, is insufficient to establish a contract binding upon the county.

■ The plaintiff's contention that by erecting the bridge and thereafter bearing the expense of its repair and maintenance until its annexation by the city, the county effectively ratified and confirmed the terms and conditions of the written agreement purporting to have been previously executed on its behalf by H. C. Funk, is likewise untenable. While it is true that a fiscal court may ratify and confirm any contract it might have made in the first instance, in Duff v. Knox County, 238 Ky. 71, 76, 36 S.W.2d 870, 872, the Court has made it plain that such ratification, to be effective, "must be made in the same manner and with the same formality that is required to bind the county in entering into a contract within its authority. The ratification must be by an order unequivocal in character and duly entered and signed in the manner directed by the statutes governing the action of fiscal courts."

■ Since it is not shown that at the time the territory embracing the bridge was annexed to the City of Lexington the county was under a subsisting contractual obligation to the plaintiff to maintain or repair the bridge, it necessarily follows that no such obligation to plaintiff devolved upon the city as the result of the annexation.

■ Since the plaintiff was not a party to the contract of 1909 between the city and the traction company, the mere fact that after the erection of the new bridge, the city and the traction company maintained and kept it in repair, falls far short of establishing a contractual obligation to the plaintiff on the part of the city to forever maintain the bridge without cost to the plaintiff. A city, like a county, can speak only through its records, Riddell v. Boone County, 183 Ky. 77, 79, 208 S.W. 323, and a contract obligating the city to expend public funds cannot be created by implication. Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656, 167 S.W. 922, 52 L. R.A.,N.S., 880.

■ Neither of the parties contends that their respective duties or obligations here under consideration are governed by the present statutory provisions, KRS 94.550–94.570, relative to the elimination of railroad grade crossings in cities of the second class by the erection of overhead bridges at the intersection of public streets and railroads, and it seems clear that such provisions are not applicable to this case.

In Louisville & N. R. Co. v. Muncey, 229 Ky. 538, 17 S.W.2d 422, the Court settled the law of Kentucky to the effect that the duty to the traveling public to keep a bridge, such as the one here involved, in a reasonably safe condition for public travel rests jointly and equally upon the city and the railroad company, notwithstanding an agreement between them regulating their duties and liabilities as between themselves.

Upon consideration of numerous Kentucky authorities bearing upon the point, the Court said:

918

"* * * it is the unconditional duty of a municipality to maintain its public ways in a reasonably safe condition for the use of the traveling public.

"* * * but the fact that it was the duty of the city to maintain the bridge does not mean that it could not likewise be the duty of the railroad company. * * *

"* * * where a railroad company consents to the construction of a public overhead crossing above its tracks, it owes the duty to maintain such crossing in a reasonably safe condition for the benefit of the traveling public." 229 Ky. pages 551, 553-554, 17 S.W.2d 429.

Under general principles of law and equity which govern the remedy by way of contribution between parties under a joint and equal duty and liability, co-obligors must contribute equally in discharging their common obligation. One co-obligor will not be compelled to bear more than his just share of the common burden. Wood v. Wheat, 226 Ky. 762, 11 S.W.2d 916. In the absence of an agreement in respect to their rights and liabilities, as between themselves, the general doctrine of the law of contribution must prevail and co-obligors will be required to contribute equally to the expense of discharging the common obligation. 13 Am.Jur. §§ 22, 23, pages 24, 25; see Am.Law Inst. Restatement, Restitution, §§ 81, 85.

Since, in respect to the duties and obligations of the parties which are here presented for consideration, the plaintiff and defendant stand as co-obligors and, as above pointed out, the record is insufficient to show a valid subsisting contract between them governing their rights and liabilities as between themselves and there is no applicable statutory provision fixing an unequal apportionment of their common burden, it follows that, under the general doctrine of contribution, it is the duty of the plaintiff and the defendant to bear jointly and equally the expense necessary to the maintenance and repair of the bridge here involved in a reasonably safe condition for public travel.

Judgment will be entered in conformity herewith.