**W. E. BELL, Individually, etc., Appellant,**

v.

**BOARD OF EDUCATION OF BARREN COUNTY SCHOOL DISTRICT,**
Appellee.

Court of Appeals of Kentucky.

March 3, 1961.

Uhel O. Barrickman, Glasgow, for appellant.

Joseph R. Rubin, Louisville, for appellee.

STANLEY, Commissioner.

This action was instituted by the Board of Education of Barren County against W. E. Bell, a citizen and taxpayer of the school district, as representative of the class (CR 23.01), for the purpose of testing the validity and obtaining approval (KRS 66.210, 66.220) of a proposed bond issue of $141,-000 to fund a debt covered by several notes due a local bank which were authorized by KRS 160.540. Inability to pay the notes is due to a deficiency in the collection of anticipated revenues. The action also sought the approval of the sale of the bonds at a premium of $15 per $1,000 bond to cover expenses and of a special tax levy at whatever rate may be necessary to create a sinking fund for the payment of the principal and interest of the bonds.

The answer admitted the allegations of the capacity of the parties, the procedural statutes and the bona fides of the controversy. Other allegations of the complaint were denied, and the plaintiff was called upon to prove the validity and legality of the proposed bonds and tax levy.

An order permitted and directed the defendant, Bell, to defend the action for and on behalf of himself and others of the class.

Upon the evidence the court, a special judge presiding, made a detailed finding of fact, which we summarize in the particular and most pertinent parts.

1. In the preparation of its annual budgets for the previous three years, 1957–1958, 1958–1959, 1959–1960, the Board of Education had made reasonable and good faith estimates of its anticipated revenues, considered the possibility of collecting less than the entire levies and had conservatively regarded the prospective normal economic situations.

2. The estimates of the income for the three years from four sources of revenue were proved, namely, general property, franchises, bank shares and poll taxes. The totals were $271,570.67, $387,633.34 and $386,493.53, respectively, aggregating $1,-045,697.54. The included franchise taxes were $95,349.67, $207,188.34 and $209,076.-40, respectively, aggregating $511,614.41.

3. These estimates of revenue set forth in the budgets were approved by the State Department of Education in accordance with KRS 160.470, and the franchise taxes were based on assessments made by the State Department of Revenue and of this Board's rateable share thereof.

4. The actual receipts during the three years, which were close to the estimates except receipts from franchise taxes, were $192,221.03, $292,201.57 and $240,635.73, a total of $725,058.33. The franchise tax collections were $18,661.33, $117,770.20 and $65,167.68, respectively, a total of $201,-599.21. The deficiencies in franchise taxes were $76,688.34, $89,418.14 and $143,908.72, respectively, a total loss of $310,015.20.

5. The State Department of Revenue certified on May 31, 1960, to the Barren County Board of Education that it had

failed to collect taxes on $9,404,617 of the estimated assessed valuation of franchises for the three school fiscal years stated. The falling off in the collection of the anticipated revenue from this source was by reason of the decisions of this court holding erroneous the method of computing the assessed valuation of franchises of gas pipe line companies, particularly in the matter of equalization. See Luckett v. Tennessee Gas Transmission Co., Ky., 331 S.W.2d 879 and Luckett v. Texas Eastern Gas Transmission Co., Ky., 336 S.W.2d 567. The effect of the decisions was to upset and reduce the total assessments of such pipe line companies below the amounts theretofore made by the Department of Revenue, with resulting deficits in that anticipated revenue.

6. By reason of the great deficiency in the allocable franchise tax collections the Barren County Board of Education had incurred a debt of $141,000, represented by promissory notes. The expenditures giving rise to the debt were for legitimate school purposes. This is a valid indebtedness of the school district within the constitutional limitations of debt.

7. The financial condition of the Board resulted from the fact that it had in good faith and reason relied on the advice of the State Department of Education and an opinion of the Attorney General in budgeting revenues expected to be received. The advice was given in anticipation that the ruling of the Court of Appeals would be favorable to the several boards of education in the above-cited cases. The debt had been created without fault on the part of the Board of Education of Barren County.

8. At the present time the Board of Education has no outstanding general obligation indebtedness other than that to be funded, and the total of $141,000 of bonds will constitute less than 2% of the total assessed valuation of the taxable property in the district and will be within the limitations of § 158 of the Constitution.

9. The proceedings of the Board relative to the form and adoption of resolutions and orders concerning the proposed bond issue were appropriate, proper and sufficient.

We concur in these findings of fact.

The judgment is in accordance with the findings of fact and conclusions of law. It declares the debt is valid and may be funded. It adjudges, therefore, that the proposed bonds will be valid and subsisting obligations of the school district.

Section 157 of the Constitution declares, "No * * * taxing district or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year" without the assent of the voters, "and any indebtedness contracted in violation of this section shall be void." Since the decision of Payne v. City of Covington, 276 Ky. 380, 123 S.W.2d 1045, 122 A.L.R. 321, the construction of the phrase "income and revenue provided for such year" has been that it means that which the particular taxing district has actually provided for in reasonable and good faith anticipation of collecting. Several factors are to be considered in making the estimates. Fulton County Fiscal Court v. Southern Bell Tel. & Tel. Co., 285 Ky. 17, 146 S.W.2d 15; Blancett v. Leet, 297 Ky. 141, 179 S.W.2d 223. We have held that where a board of education or other municipal corporation had made such provision in its annual budgets (KRS 160.470) and the board had become indebted because of the failure to collect in full all the revenue anticipated and budgeted for the current year, that is to say, "the income and revenue provided for such year," the accrued indebtedness, contracted during the year or course of years, was a valid and binding obligation; therefore, we approved the issuance of bonds to liquidate the indebtedness over a term of years under the terms of § 158 of the Constitution. Among the recent cases are Abbott v. Oldham County Board

of Education, 272 Ky. 654, 114 S.W.2d 1128; Brown v. Hopkins County Board of Education, 274 Ky. 298, 118 S.W.2d 703; Citizens Bank v. Rowan County Board of Education, 274 Ky. 481, 118 S.W.2d 704; Ebert v. Board of Education of School District of City of Newport, 278 Ky. 75, 128 S.W.2d 185; Blancett v. Leet, 297 Ky. 141, 179 S.W.2d 223; Patterson v. Board of Education, Ky., 269 S.W.2d 739. Earlier cases are cited in these.

In the present case the facts were fully developed and the circuit court was warranted under the terms of KRS 66.210, 66.220 in approving the proposed bond issue.

■ The question is presented whether a special annual tax levy above the present maximum regular levy authorized by KRS 160.475 may be made to amortize the principal and interest of the bonds. The Barren County Board of Education now levies the maximum rate.

The order and resolution of the Board authorizing the bonds provide that they are to be secured by the pledge of the "levy and collection of an annual tax, without limitation as to rate or amount sufficient to pay the bonds and interest requirements and that the fiscal court shall include in the annual school tax" whatever special tax rate or amount is needed in order to meet such requirements. The circuit court found from the evidence, "There is virtually no margin or leeway in the annual revenues of the Board to meet such requirements out of the proceeds of its regular $1.50 tax levy. It is established that a $1.48 annual tax rate is necessary merely to produce the required local tax effort necessary to enable the Board to qualify for State school funds under the Minimum Foundation Program. The only feasible solution seems to be the provision for levying whatever annual special tax rate in excess of the regular $1.50 levy, is necessary to meet such principal and interest requirements." The court further found, "An annual tax rate of approximately eight cents would be required

to amortize the principal and interest requirements of said proposed issue of $141,000 of bonds over the proposed fifteen years of maturity of such bonds."

There is no constitutional limitation on tax rates for school purposes. Section 157, Constitution. Section 159 reads:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

The statute, KRS 160.475, provides that the ad valorem tax levy for "other than sinking fund purposes" in each school district shall not exceed $1.50 on each $100 of property subject to local taxation.

■ We have held where a valid debt, as measured by the constitutional limitations, has been incurred by a county or city, § 159 of the Constitution requires that there shall be collected an annual tax to pay the principal and interest thereon. Griffin v. Clay County, 304 Ky. 592, 201 S.W.2d 733; City of Hickman v. First National Bank, 307 Ky. 702, 211 S.W.2d 801; Walker v. City of Maysville, 310 Ky. 118, 220 S.W.2d 96; Davis v. City of Jenkins, Ky., 238 S.W.2d 475. This interpretation in its application to the statutory maximum was recognized in Patterson v. Board of Education of Larue County, Ky., 269 S.W.2d 739. But as it appeared that the collection of anticipated taxes on whiskey withdrawn from bonded warehouses had merely been postponed and the proposed funding bonds to liquidate the floating debt incurred thereby could be amortized from current regular revenues without seriously impairing the efficiency of school operations, we held that a special tax was not authorized. In the present case the anticipated revenues have been irretrievably lost.

The trial court was, therefore, warranted in approving the special tax.

The order and resolution of the Board provided the bonds should bear interest "at a coupon rate or rates to be determined at the time of public sale of same, not to exceed the legal maximum of six per cent (6%) per annum," but listed graduated annual interest requirements based upon the "tentatively anticipated interest rate of four and one-half per cent (4½%)." The order also provided for public sale of the bonds at $1,015 per $1,000 bond "or not less than the face amount as may be determined by the court." Bidders were to be permitted to specify the interest rates not to exceed a maximum of six per cent.

The circuit court approved the plan of the Barren County Board of Education to offer the bonds at a minimum price of $1,015 for each $1,000 bond and to use the premium to pay most of the expenses of issuing the bonds.

■ The question as to the use of the premium for payment of expenses incidental to the issuance of the bonds is novel. The plan seems to be an ingenious scheme to avoid the effect of our decisions that such expenses incurred in connection with *funding bonds* may not be added to the principal of the bonds, as the amount of the expenses is no part of the debt. Richardson v. Monroe County, 271 Ky. 368, 112 S.W.2d 47; First National Bank of Princeton v. City of Princeton, 273 Ky. 601, 117 S.W.2d 210. If the bonds should be sold at a premium, as they are required to be done here, of course, there would be no increase in the debt. While the plan presented would not prima facie increase the debt, it would as a matter of reality result in the Board of Education having to pay the cost ultimately through a higher rate of interest than if the bonds were offered at par. As stated above, the order of the Board requires that the bonds be sold at a premium of $15 each. This would yield altogether $143,115 for a debt of $141,000. The com-

petition in the bidding, if any, rests on the rate of interest to be paid. It is not to be supposed that a bidder will offer the same or a lower rate of interest on a $1,000 bond when he has had to pay $1,015 for it. Therefore, ultimately the premium would be funded and would have to be paid out of the special taxes.

■ It is generally held that proceeds of municipal bonds, including premiums obtained in the sale thereof, must be applied to the purposes for which the bonds were issued and sold and the funds may not be diverted to other purposes or uses. 15 McQuillin, Municipal Corporations, § 43.68; Levinthal v. City of Covington, 243 Ky. 614, 49 S.W.2d 574; City of Newport v. McLane, 256 Ky. 803, 77 S.W.2d 27, 96 A.L.R. 655. But we recognize that part of the proceeds of the sale of original obligation bonds may be used to pay the reasonable expenses incident to issuing them. Crick v. Rash, 190 Ky. 820, 229 S.W. 63; Duff v. Knott County, 238 Ky. 71, 36 S.W.2d 870; Governor v. Wolfe County, 291 Ky. 267, 163 S.W.2d 485.

■ Fundamentally, the expenses of a bond issue bear the same relationship to the debt being funded as does the interest that will be paid on the money to be borrowed. For this reason we have reconsidered Richardson v. Monroe County, supra, and First National Bank of Princeton v. City of Princeton, supra, and have determined that to the extent they hold otherwise, they are unsound and should be overruled. The conclusion then is that although premiums must be applied to the purposes for which the bonds were issued, the reasonable expenses incident to the issuance and sale of funding bonds are within those purposes.

The judgment is affirmed except insofar as it approves the requirement that the bonds be sold at a premium. To that extent the judgment is reversed that it may be modified in accordance with this opinion.

Affirmed in part, reversed in part.