

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXX
**ATTORNEY GENERAL**

Honorable V. J. Campbell
County Attorney, Garza County
Post, Texas

Dear Sir:

Opinion No. 0-5638
Re: Whether a fee for the refunding of Courthouse and Jail outstanding bonds can be paid from the Courthouse and Jail Sinking Fund, under the facts set forth.

    Your letter of September 24, 1943, requesting the opinion of this department on the question stated therein, reads as follows:

"Are the County Commissioners of a named County authorized to pay from the Courthouse and Jail Sinking Fund, a fee in the sum or amount of $3,267.00 for refunding the Courthouse and Jail outstanding bonds, there is outstanding bonds in the sum of $66,000 and the fee as stated will be in the amount of $49.50 per thousand. The question is, shall that fee be diverted from the Courthouse and Jail Sinking Fund to the fee exacted for the refunding of these bonds.

"The County Judge and Commissioners understand that the matter is optional, as was declared by the Supreme Court of Texas in mandamus proceedings instituted by Cochran County, Texas."

    The contract between the county commissioners and H. L. Shaffer and Company, a certified copy of which accompanies your inquiry, reads as follows:

"HONORABLE CO. Judge and Commissioners'
Court of Garza County, Texas.

"GENTLEMEN:

"Referring to your $82,000 Court House and Jail bond issue dated Feb. 15, 1927, of which there are outstanding $66,000, bearing 5½% interest, we make you the following proposition for re-

funding of the now outstanding bonds into refunding
bonds bearing 3% interest and maturing as follows:

"Same as the now outstanding bonds.

"We agree to use our best efforts in assemb-
ling the old bonds for exchange for new refunding
bonds on a basis of par for par, and we will pay
all the expenses incurred by us in the refunding
of the bonds. We will also pay for the attorney's
opinion and pay for the printing of the new bonds.
For and in consideration of our services and ex-
penses in this connection, it is understood and
agreed that you will pay us at the rate of $49.50
per $1,000 of bonds exchanged as same are exchanged.
In event no bonds are exchanged you will owe us
nothing.

"It being further understood that you will co-
operate with us to the end that the refunding of these
bonds is completed without undue unnecessary delay.

"The County to have the privilege of paying
off $10,000 of the bonds out of sinking fund money.

"Respectfully submitted,

"H. L. Shaffer & Company

"By H. L. Shaffer

"The above proposition is hereby accepted by
order of the Commissioners Court, this 1st day of
July, 1943."

Article 839, Vernon's Annotated Civil Statutes, pro-
vides:

"No city or county treasurer shall honor
any draft upon the interest and sinking fund pro-
vided for any of the bonds of such city or county,
nor pay out nor divert any of the same, except for
the purpose of paying the interest on such bonds
or redeeming the same, or for investment in such
securities as may be provided by law."

Replying to your question, as to the authority of
the commissioners' court to pay the fees or commissions called
for in the contract out of the Sinking Fund of the Courthouse
and Jail Bonds, we call your attention to the case of Elser v.

City of Fort Worth, 27 S.W. 739-741, in which the Court held that the test of the legality of a particular use of the sinking fund is whether or not the fund is being used for the purpose of ultimately accomplishing that result (the final redemption of bonds) and is not being diverted from the main object of its creation. In that case the Court held that the drawing of the draft to buy securities as an investment of the sinking fund was a draft drawn to redeem the bonds, inasmuch as it was a step toward the final redemption of the bonds.

In a recent case by the Kentucky Court of Appeals, The Governor v. Wolfe County, 163 S.W. (2d) 485, the Court holds that the county "could legally contract with some agency to bring together the bondholders and persuade them to exchange their 5% bonds for others bearing a less rate, and running over a longer period, and to pay the agency to prepare and file application for approval of a refunding plan; work out plans, to prepare and deliver all legal papers necessary for the consummation of the plans, the fees for the services to be paid from the Road and Bridge Sinking Fund, and not from the proceeds of sale, since the plan provides for no sale."

In our Opinion No. 0-3320, a copy of which is enclosed herewith, we held that the Board of County and District Road Indebtedness has ample authority to pay a premium for eligible road bonds and to use the sinking fund of counties deposited with the Board to retire such bonds, in payment of such premiums. In Opinion No. 0-5919, a copy of which opinion is enclosed herewith, this department held that the commissioners' court had authority to enter into a contract with a certain company in connection with the proposed plan of refunding courthouse bonds and to pay the fees or commissions called for therein out of the sinking fund of the courthouse bonds.

In the contract submitted by you, it appears that the interest will be reduced from 5½% to about 3.45%. This figure (3.45) includes the 3% interest stated in the contract and the fees to be paid for the refunding of the now outstanding bonds. It is a step toward the final redemption of these bonds, if the county can, by paying a certain amount now, save a larger amount in the future interest costs on these bonds. Under the proposed plan of refunding these 5½% bonds by the issuance of refunding bonds bearing 3% interest, the county will reduce its obligation. Therefore, it is our opinion that the use of the Sinking Fund for accomplishing this result is not a diversion of the main object for which the fund was created but is wholly consistent therewith. In other words, the use of these funds for this purpose is in keeping with the purpose for which the fund was created, namely, the ultimate re-

demption of the bonds.   Your question is, therefore, answered in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Ardell Williams
          Ardell Williams
               Assistant

AW:EP:wc

Encls.


APPROVED OCT 16, 1943
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/GPB Chairman