## Kern et al. v. City of Mount Sterling.

(Decided February 21, 1930.)

ROBERT H. WINN and R. C. KERN for appellants.

HENRY WATSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

Mt. Sterling is a city of the fourth class and is the county seat of Montgomery county. The total assessed valuation of ad valorem taxpaying property within its corporate limits for the year 1929 was $2,707,135, and it had no outstanding indebtedness. It needed new fire extinguishing apparatus and machinery, as well as improved quarters for housing it and for the use of the firemen. It was estimated by its city council that the cost of supplying such necessities would be $15,000, which could not be paid out of the 1929 revenue for the city because all of it had already been appropriated, and the $15,000 expenditure for the purposes stated would exceed the revenue that was or could be provided for that year. The city council, on September 3, 1929, unanimously passed an ordinance providing for and calling an election to be held on the regular election day for 1929 for the purpose of taking the sense of the voters of the city as to whether it should issue its bonds to the amount of $15,000 in order to raise the necessary revenue for the purposes indicated. At the election so called more than two-thirds of those voting upon the subject were in favor of the issual of the bonds, and the canvass of the vote so indicating was duly made and reported according to law.

The council then passed another ordinance setting out the denomination of the bonds, which were to run throughout a period of only 10 years, the dates and periods of their payment, the interest they should bear, and the amount to be raised each year, with the rate of taxation on the assessed property within the city, and also providing for the advertisement of bids for the purchase of the bonds and other incidental matters not involved in this litigation. At the sale for the bonds the appellants and defendants below, R. G. Kerns and Robert H. Winn, were the highest and best bidders, they offering a premium of $600 for the entire issue, making the total sum of $15,600, and it was accepted by the city. The bonds were duly prepared, as required by the ordinance enacted following the election, and they were tendered to the defendants as the successful bidders but they declined to pay the amount of their bid, or to accept the bonds, upon two grounds: (1) That the ordinance calling the election provided and prescribed in its cap-

tion (or title) that the proceeds of the bonds, if voted, should be used "for the purpose of purchasing fire equipment apparatus;" while the notice of the election, and the question submitted to the voters on the ballot, were in this language: "Are you in favor of issuing fifteen thousand ($15,000) dollars in bonds for the purpose of purchasing fire equipment apparatus to extinguish fires in the City of Mount Sterling, Kentucky, and to make such repairs and changes in the City Building as will be necessary to properly install and care for said fire-fighting equipment, when purchased?" It was, and is, therefore contended under this ground that the direction in the title of the ordinance calling the election, which was for the single purpose, as contended, of purchasing fire-fighting equipment, was departed from in the notice, and in the question propounded to the voters, by authorizing the expenditure of the funds to be derived from the bond issue for the additional purpose of making "such repairs and changes in the city building as will be necessary to properly install and care for said fire-fighting equipment, when purchased," and for which reason the election was invalid.

Ground 2 for refusing to take the bonds was based upon the fact that the ordinance calling the election, as well as the one levying the tax fixing the rate, etc., following it, provided for a tax rate of 8 cents on the $100 worth of taxable property in the city and for the collection of an annual sum of $1,965 for the purpose of paying interest and creating a sinking fund with which to discharge the bonds as they matured, and which it is contended was and is insufficient for that purpose, since the calculation so made and set forth in the ordinance was upon the basis of 5 per cent. interest on the bonds; whereas, they were to and do bear 6 per cent. interest, and which resulted in a miscalculation of the amount necessary to be raised each year, by the total sum of $958.50, or $95.85 per year for the 10 years within which the bonds were to be paid.

The city, after such refusal, then filed this action against defendants to recover the amount of their bid, and with the petition the bonds duly executed were tendered. The foregoing facts leading up to the tender of the bonds to plaintiff, together with all other relevant and material ones, are set out in the petition with meticulous care, as well as the financial condition of the city and the amount of assessable property for ad

valorem taxes therein. The petition also included inserted copies of all the ordinances passed by the city council bearing upon the question, as well as the notice to be given of the election, the canvassing of the results thereof, and every step taken to incur the indebtedness. Defendants demurred to the petition, which the court overruled, and they declined to plead further, which was followed by a judgment against them for the amount of their bid, to reverse which they prosecute this appeal and in their brief rely upon grounds 1 and 2, supra, for a reversal of the judgment.

The authority under which the indebtedness was attempted to be created is found in subsection 34 of section 3490 of our present Kentucky Statutes, which is a part of the charters of fourth class cities, the applicable portion of which says: ''If at any time the board of council shall deem it necessary to incur any indebtedness, the payment of which can not be met without exceeding the income and revenue provided for the city for that particular year, they shall give notice of an election by the qualified electors of the town to be held, to determine whether such indebtedness shall be incurred. Such notice shall specify the amount of the indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such notice shall be published for at least two weeks in some newspaper published in, or of general circulation in such town, or by posting written or printed notices at three or more public places in such town. If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified electors in such town shall have voted in favor of incurring such indebtedness, it shall be the duty of the board of council to pass an ordinance providing for the mode of creating such indebtedness, and of paying the same. But such indebtedness shall not in any event exceed the limit provided in the constitution for cities of the fourth class. And in such ordinances provision shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such town, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal thereof, within a period of not more than twenty years from the time of contracting the same.''

It will be observed that the inserted language nowhere requires the enactment of an ordinance prior to the giving of notice for the election, and the enactment of one would therefore appear to be superfluous, although it would not affect the legality of the election when the council saw proper to express its determination to call the election in that form. We see no legal objection to its doing so; but such procedure is nowhere required in the legislative authority conferred upon the council to call and hold the election, and to thereby contract the indebtedness. It is required that the *notice* of the election shall specify the amount of indebtedness proposed to be incurred and the purposes for which it is incurred, with the amount of money necessary to be raised by taxation each year with which to pay the interest and creating a fund with which to extinguish the debt. It is our conclusion that it would have been competent for the council by an ordinary motion to call an election for the purpose of creating the indebtedness to the amount agreed upon, and then to specify the purposes, the amount of annual collection, and other requirements in the *notice* for the election when it should be given, plus the required information contained in the question to be submitted to the voters at the election, and the case of Rees v. Kranth (Ky.) 120 S. W. 370, would seem from the opinion to support such conclusion. But, whether it does so or not, the inserted language from subsection 34 of section 3490, supra, is, to our minds, susceptible to no other interpretation. Therefore, it being unnecessary to precede the notice for the election with any such data, a failure to insert it is the ordinance under which the election was called would not militate against the validity of the election if subsequently required steps contained the necessary data required by the statute vesting the council with authority to call the election.

If, however, we should be mistaken in that interpretation (but which we do not concede), then the originally enacted ordinance calling the election in this case *did* make provision by its express terms for the dual purpose of purchasing fire extinguishing equipment, and changing and repairing the city buildings within which such equipment should be installed and cared for. We say this because, while that ordinance *in its caption* (or title) confines the expenditure of the proceeds of the proposed indebtedness to only the purchasing of fire-fighting

apparatus, yet in its body it expressly enacts, *in hac verba,* the notice that was later given of the election, and in that notice it is specifically expressed, among other things, that the purpose of creating the indebtedness "is to purchase the necessary fire-fighting equipment to extinguish fires in the city of Mount Sterling, Kentucky, *and to make such repairs and changes in the city building as will be necessary to properly install and care for said fire-fighting equipment when purchased."* (Our italics.)

The same language was contained in the question submitted to the voters on the ballots. Section 51 of our Constitution requiring statutes to contain but one subject, which shall be stated in the title, does not apply to the enactment of ordinances of fourth class cities as was held by us in the case of Tuggles v. Commonwealth, 100 S. W. 235, 30 Ky. Law Rep. 1071, and later approved in the case of Kentucky Light & Power Co. v. James H. Williams & Co. (Ky.) 124 S. W. 840. The enacted notice of the election was and is as much a part of the body of the ordinance in which it is contained as is any other portion of it, and although it goes beyond the purposes (for the creation of the debt) as contained in the *caption* or *title* of the ordinance, the additional matter it includes, i. e., the dual purpose of the indebtedness contained in it, is not invalid on that account, since the last-cited cases, supra, do not confine the body of the ordinance to only the subject stated in its caption or title. In other words, the language of the notice of the election, and that composing the question to be submitted to the voter, furnishes the determining facts in issue, although it may not have been used by the board of council when it called the election, whether in the form of an ordinance, a resolution, or a mere motion.

The relied on case in support of this ground is City of Louisville v. Board of Education of City of Louisville, 229 Ky. 325, 17 S. W. (2d) 210, 211; but it is easily and plainly distinguishable from the facts of this one. In that case the city had previously issued $5,000,000 of school bonds under a statute allowing the issual thereof "for the proper accommodation of the schools of such city to purchase a site or sites or to erect school houses for the high schools or for the other schools, or to purchase land for the enlargement of existing school yards, or for any or all these purposes." A surplus of the voted indebtedness under that statute existed, and the

question involved was: Whether that surplus could be legally expended in the furnishing of school equipment to certain designated city schools? and we held that it could not be done, since the purpose of the creation of the bonded indebtedness (from which the surplus arose) was confined to the objects and purposes set forth in the quoted statute and that it would be a diversion of such funds to apply any portion thereof to the *equipment* of schools, as was proposed to be done by the city board of education. Clearly, that case can have no bearing upon the facts of this one.

Moreover, that case, which is the only one relied on in support of this ground, involved the question of the right to expend a part of a fund for a purpose different from that for which it was voted. If, in this case, the law should be determined as contended for by defendants, i. e., that the funds of the involved indebtedness herein could not be spent for any other purpose than the purchasing of fire extinguishing equipment, it seems to us it could not affect or militate against the duty of defendants in this case to pay for the bonds, which is the only question involved, and which is quite beside the one as to the purposes for which the proceeds when so paid may be expended by the city. If in the future there should be an effort on the part of the city council to expend the proceeds for an illegal purpose, then the question involved could be raised by a taxpayer in the same manner it was done in the 229 Kentucky case, supra, relied on by defendants. For the reasons stated, we conclude that ground 1 is without merit, and it is disallowed.

In support of ground 2, the case of the City of Providence v. Ruckman, 195 Ky. 471, 242 S. W. 844, is relied on. In that case neither in the notice of the election, nor any enactment of the city council of Providence, was there any statement of the amount of the annual revenue to be collected for the purpose of discharging the interest and creating a sinking fund for the payment of the voted indebtedness, and which was a total failure to comply with the requirements of subsection 34 of section 3490, supra, by the city of Providence, which was a fourth class one the same as is Mt. Sterling. In the Rees case, supra, it was held that a substantial compliance with the requirements of that subsection was all that was necessary; but in the City of Providence case there was no sort of compliance, substantial or otherwise. In this case the ordinance enacted subsequent to the election

and which provided for the issuing of the bonds, did prescribe the amount of money to be raised annually for the purposes indicated, but it was calculated on the basis of 5 per cent., instead of 6 per cent., which made a difference for the entire period on all the specified annual amounts to be raised of $958.50; but in which calculation nothing but the par value of the bonds was taken into consideration. The $600 premium agreed to be paid for the bonds will reduce that amount to $358.50, or $35.85 per year. Under such circumstances, it is perhaps correct to say that such a small deficit in the calculation would not militate against a *substantial* compliance with the requirements of the statute.

But, beyond that, it is a fact of which we may take judicial knowledge that the annual amount to be collected in this case could be easily placed in a savings deposit account, drawing as much as 3 per cent. interest annually. We have not made the calculation as to how much that would raise throughout the period for which the bonds are to run, but we have done so sufficiently to become convinced that such interest would more than take care of the slight deficit of $358.50 for the whole period, or $35.85 annual deficit above the calculation made and inserted in the ordinance enacted after the election was held. We are therefore convinced that ground 2 is also without merit and cannot be sustained.

Wherefore the judgment is affirmed.

Whole court sitting.