## Howard et al. v. Board Of Education Of Harlan Independent School District.

October 11, 1949.

Clarence A. Cornelius for appellants.

G. E. Reams for appellees.

JUDGE CAMMACK—Reversing.

The validity of School Improvement Bonds voted by the taxpayers in the Harlan Independent School District in the amount of $108,000 is involved in this case. The appeal is being prosecuted from a judgment approving the validity of the bonds on the grounds that: (1) the accomplishment of the purpose for which the bonds were voted will cost about four times the amount of the bond issue: (2) the notice of the election was insufficient; and (3) the bonds should have been callable at any time before maturity within the discretion of the Board of Education, as provided in the resolution calling for the bond election.

The boundary lines of the Harlan Independent School District are not coterminous with those of the City of Harlan, so the Fiscal Court of Harlan County is the tax levying authority for the district. KRS 160.-460. KRS 162.080 provides for the voting and issuance of school bonds. Because of a fire it became necessary for the Harlan Board of Education to build a new high school building for colored students. A building project involving the expenditure of some $400,000 was deemed desirable. However, the amount of bonds which could be voted in the school district under Section 158 of the Constitution was only $108,000.

In accordance with KRS 162.080, the Board of Education certified to the Fiscal Court the fact that a bond issue for school building purposes was necessary. In all probability the School Board had discussed its building needs with the State Board of Education or staff members of the State Department of Education, but the record is silent in this respect. It would seem that at least preliminary approval of the district's educational program, including all aspects of the building program, on the part of the State Board of Education was necessary in view of the fact that the project involved the expenditure of approximately four times the amount of

the voted bond issue. Certainly the Fiscal Court would have had before it a more comprehensive picture of the school district's building needs if such information had been furnished it. The opinion in the recent case of Bell et al. v. Board of Education of Shelby County, 308 Ky. 848, 215 S. W. 2d 1007, is authority for the statements just made. The case of Boll v. City of Ludlow, 234 Ky. 812, 29 S. W. 2d 547, disposes of any question as to the validity of the amount of the bonds since the total of $108,000 comes within the constitutional limits.

The date of the election was fixed in accordance with the provisions of KRS 162.080. A notice of the election to be held on November 2, 1948 was published in the Harlan Daily Enterprise on October 20th, 21st and 22nd. In addition, a mimeographed notice and sample ballot, signed by the members of the Board of Education, were given general circulation among the voters of the school district beginning October 28. We think the notice was. sufficient. See Mollette v. Board of Education of Van Lear Graded District, 260 Ky. 737, 86 S. W. 2d 990.

After the Board of Education made its certification to the Fiscal Court, the Fiscal Court adopted an ordinance calling for the bond election at the next regular election. KRS 162.080 provides, among other things, that: "The ordinance or resolution shall fix the time the bonds shall run and, if a serial issue, the amount to mature at each time." Before setting up the schedule for retiring the bonds, the ordinance expressly provided that they "shall be callable at any time before maturity within the discretion of the Board of Education of said district."

After the bond issue was approved, the Board of Education and the Fiscal Court attempted to take the necessary steps under KRS 162.080 and 162.090 for the issuance of the bonds. When the Board made its certification of the details for the issuance of the bonds, it did not provide that they should be callable at any time before maturity, as had been provided in the ordinance adopted by the Fiscal Court for the calling of the election. Subsequently the Fiscal Court sought to amend its orders and resolutions so as to conform to those of the Board of Education as to the issuance of the bonds.

The contention is made that KRS 162.090 gives the

Board of Education the right to determine, among other things, the question as to whether or not the bonds should be callable before maturity. This section provides in part: "They (the bonds) shall be placed under the control of the board of education, and the board shall determine when, at what price and how the bonds shall be sold, the date, number of bonds, denomination, whether coupon or registered, the rate of interest, the frequency and place of payment of principal and interest, and other details as desired, embodied in the bonds or in the ordinance providing for their issue." Both KRS 162.080 and 162.090 were a part of Section 42 of Chapter 65 of the Acts of 1934. It is first provided that the Fiscal Court shall provide the time the bonds shall run, the type of issue and the amount to mature at each date. Once bonds are voted, the Board determines the manner in which they shall be sold, but all of the authority vested in the Board as to the sale and the handling of the bonds and their payment is predicated upon the manner in which they are voted, which must be in accordance with the ordinance of the Fiscal Court providing for the bond election. Certainly the question as to whether School Improvement Bonds should be callable before maturity is one of time of payment and not merely a mechanical detail as dealt with in KRS 162.090. The voters of the School District had a right to look to the ordinance providing for the bond election before determining how they would cast their votes on the proposition. In the case at bar one of the essential facts concerning the proposed issue was that the bonds should be callable before maturity. The voters had a right to rely upon that fact, and the Board of Education had no right to sell noncallable bonds. Furthermore, the Board was vested with no authority to omit this essential item in its resolution providing for the issuance of the bonds.

It follows that the judgment should be, and is, reversed with directions to set it aside, and for the entry of a judgment directing the Board of Education to prepare its orders providing for the issuance of the bonds in accordance with this opinion if it desires to issue them.