**CITY OF LOUISVILLE et al. v.
KESSELRING.**

Court of Appeals of Kentucky.

May 1, 1953.

Gilbert Burnett, Alex P. Humphrey, Eli H. Brown, III, Marshall P. Eldred, and Brown, Eldred, Brown & Tachau, all of Louisville, for appellants.

Garner M. Petrie, Louisville, for appellee.

DUNCAN, Justice.

This appeal is from a judgment declaring the invalidity of a proposed issue of general obligation bonds of the City of Louisville in the amount of $4,000,000, the proceeds of which are to be expended for the benefit of the University of Louisville. Although adjudging all preliminary steps to have been properly taken, the lower court concluded that there was a fatal variance between the maturity schedule as set out in the ordinance calling the election and proposing the bonds and the ordinance enacted after the election authorizing the issuance and sale of the bonds.

We have carefully examined the record in the light of applicable constitutional and statutory provisions, and we specifically concur with the finding of the Chancellor that: (1) the court had jurisdiction of the subject matter and the parties; (2) the proposed bond issue did not exceed the authorized constitutional limit of bonded indebtedness of the City of Louisville; (3) the ordinance submitting the question of incurring the indebtedness and the issuance and sale of the bonds was properly enacted; (4) the submission ordinance was properly published prior to the election as required by law; (5) the submission ordinance was properly approved by the required number of voters at the general election held November 4, 1952; and (6) the University of Louisville is a municipal university within the meaning of KRS 165.010 and the purposes for which said bonds are proposed to be sold are authorized by KRS 165.100.

The sole questions remaining for consideration are: (1) In issuing serial bonds as opposed to term bonds, does the statute, KRS 165.080, authorizing the bonds for the benefit of a municipal university require that the complete schedule of serial maturities be set out in the ordinance proposing an election on the issue? (2) If the statute does not require it, but the proposing ordinance nevertheless sets out the schedule of maturities of serial bonds, is a subsequent variation in the issuing ordinance which does not materially affect the taxpayer fatal to validation? (3) May the city levy and collect an annual tax in excess of the sum provided by the proposing ordinance for the payment of interest and retirement of the bonds?

It is conceded that the schedule of maturities provided by Ordinance 214, enacted after the election, is different from the schedule set out in Ordinance 155, enacted prior to the election. It is not insisted that the city legislative authority acted capriciously in making the change. The reasons which prompted it are readily apparent from the affidavit of the bond consultant for the sinking fund of the city, which by agreement was considered as his evidence.

KRS 165.080, authorizing bonds for a municipal university, is an Act of 1924, Chapter 57, and requires the ordinance proposing the election to "provide the date and maturity of the bonds, the rate of interest they shall bear and the total amount to be then issued, and shall contain the necessary details with reference to the execution and delivery of the bonds, their denominations, coupons to be attached, and taxes to be levied to pay interest and to create a sinking fund to retire the bonds at maturity".

The same session, in providing for issuing local school bonds, Chapter 86, Acts of 1924, required the initial ordinance to contain "the date and maturity of such bonds, the rate of interest they shall bear, and the total amount to be issued; and the ordinance shall also contain the necessary details in reference to the execution and delivery of said bonds, their denominations, coupons to be annexed, tax to be levied to pay the interest and a sinking fund to retire such bonds at maturity."

In 1924, Kentucky municipalities were issuing term bonds and were building up sinking funds in anticipation of the entire issue being paid in a specified year. Thereafter, serial bonds, staggering the maturities from year to year throughout the term of the debt and amassing no sinking fund, became popular. The trend from term to

serial bonds was recognized by the 1934 session of the General Assembly, which, changed the statute authorizing local school bonds, Chapter 65, Article V, Section 42, Acts of 1934, now KRS 162.080. · Under the 1934 Act, the ordinance proposing a local school issue among other things was required to "fix the time the bonds shall run and, *if a serial issue, the amount to mature at each time.*" (Emphasis ours.)

It is significant that the change in the 1934 Act specifically required inclusion of the schedule of maturities in the ordinance calling an election where serial bonds were to be issued. The Legislature evidently concluded that such schedules were not necessary under the Act of 1924 or the specific requirement would not have been added by the Act of 1934. The statute relating to municipal universities is exactly comparable in ordinance requirements to the school issue Act of 1924 before its change to include the additional requirement for serial bonds. It reasonably follows that if the school issue Act before its repeal and amendment did not require the ordinance to contain the serial maturities the municipal university bond issue statute does not require such schedule.

■ In construing the statute here involved, we invoke the rule of contemporaneous construction which may be extended to the contemporaneous construction of another statute involving similar considerations. Volume 50, Am.Jur., Page 308, Section 318, Statutes.

In the case of Schumer v. Kenton County, 306 Ky. 667, 208 S.W.2d 960, this Court considered the validity of bonds for a county hospital. The authorizing statute, KRS 216.020, provided for an order submitting the question to the voters, which was required to "provide the date and maturity of the bonds, the rate of interest they shall bear, and the total amount to be issued". The argument was that the serial bonds to be issued were not included in the order calling the election and the requirement of the statute of the "date and maturity of the bonds" was not met. Although the serial maturities were not set out in the order, we approved the proce-

dure as a substantial compliance with the statute.

Under the proposing ordinance and the question submitted on the ballot, the voters, aside from the maturity schedule, knew the amount and purpose of the proposed indebtedness, the date of the bonds, the total time required to pay them, and the maximum interest rate. The issuing ordinance makes no change in these fundamental factors which ordinarily are the only ones taken into consideration by the voters.

■ We, therefore, conclude that a detailed schedule of maturities in the ordinance proposing the bond issue is not required by KRS 165.080. This leads us to a consideration of the second question as to whether such maturities, having been included in Ordinance 155, may be subsequently changed by Ordinance 214.

In State v. City of Miami, Fla., 1949, 41 So.2d 888, 889, the schedule of maturities was changed in the resolution ordering the issuance of the bonds and the contention was made there, as here, that the bonds were different from those which the voters had in mind when they voted to approve the issue. The Florida Court said:

"\* \* \* freeholders approved the amount and purpose of the bonds, which were the same in both issues. Other requirements, such as denomination, maturities and series, are matters that may be imposed in the discretion of the issuing authority, so long as constitutional and statutory limitations are not transgressed."

In Board of Supervisors of Placer County v. Rechenmacher, 1951, 105 Cal.App.2d 39, 232 P.2d 514, 517, the maturity of five bonds had been advanced two years by the issuing board. The court there said:

"We think it cannot be said that by advancing the maturities of these five bonds by two years the boards committed an error which affected the substantial rights of taxpayers or electors. It has been the general rule that errors and irregularities in bond issue proceedings which did not increase or change the burden upon the taxpayers and could not mislead any elector to

his prejudice would not invalidate the bonds."

Counsel for appellants concede that the variation in schedules is fatal if it materially affects the taxpayers who by their vote assumed the burden of the bonds proposed by the first ordinance. The Chancellor, in concluding that the variation was material, pointed out that under the maturity schedule provided by the first ordinance, assuming an interest rate of 2.34%, the total amount of principal and interest which would be paid in retiring the bonds over a forty-year period would be $6,130,810. Under the new schedule, the total payments, assuming the same rate of interest, would amount to $6,179,113, a difference of $48,303.

We are not prepared to say that $48,303 is an insignificant sum, even when considered in connection with such a sum as $6,000,000. However, we do not think the materiality of the change can be measured strictly in terms of dollars and cents. Such a basis does not take into consideration other factors which may more than offset the increased retirement cost. For example, we may fairly assume from the affidavit of the bond consultant that bonds offered at maturities provided in the first ordinance, if salable at all, would be bid at substantially higher interest rates than bonds of the maturities fixed by the last ordinance. So long as there is a reasonable basis for the change, and the issuing ordinance does not increase the amount of the bonds, change their date, maximum rate of interest, or the number of years necessary for retirement, we do not think the variation materially affects the taxpayers.

In deciding that the variation invalidated the proposed bond issue, the Chancellor relied on the cases of Howard v. Board of Education of Harlan Independent School District, 311 Ky. 130, 223 S.W.2d 721, and Suratt v. Board of Education of Ashland, 313 Ky. 343, 231 S.W.2d 88. We think both of these cases are distinguishable from the present case.

Both the Howard and Suratt cases involve school districts which were controlled by KRS, Chapter 162. In both of these cases, the statute involved was KRS 162.080, providing that "The ordinance or resolution shall fix the time the bonds shall run and, if a serial issue, the amount to mature at each time." As we have pointed out, KRS 165.080 only requires the submission ordinance to state the "maturity" of the bonds. The statute here involved does not require the statement of whether the bonds shall be term or serial. The statute in the Howard and Suratt cases does so require.

In the Howard case, the submission ordinance provided that the bonds should be callable at any time before maturity within the discretion of the Board of Education. The issuing ordinance did not so provide. The Court pointed out that a call provision in a bond has a direct relation to time of payment and an omission of such a provision from the issuing ordinance is fatal to validity of the bonds.

In the Suratt case, the submission ordinance, with respect to the proposed bonds, provided "the same to mature in not exceeding forty years." The issuing ordinance provided for the issuance of serial bonds. This Court reversed the lower court because the voters were unable to determine from the submission ordinance how long a time or how much taxes would be required to retire the bonds. The issuing ordinance in that case was the first one to establish the necessary information.

Finally, we consider the question of the extent to which the city is bound in the final issuance and sale of the bonds by its estimate of the annual tax required for payment of interest and retirement as set out in the proposing ordinance.

The record in this case leaves no doubt concerning the fact that the trend in interest rates of municipal obligations is steadily climbing and may be expected to further increase before these bonds can be finally sold. This fact suggests the possibility or even a probability that the sum of $160,000, originally anticipated and set out in the proposing ordinance as the annual tax required to pay the interest and create a sinking fund for the retirement of the bonds, may be insufficient for that purpose.

Under the present requirements for placing municipal obligations on the market, a

period of several months to more than a year as in this case must necessarily elapse between the enactment of the ordinance proposing the bonds and their final sale. After a favorable vote, the bonds must be declared valid by a court of competent jurisdiction. Next they must be advertised for sale to the best bidder. It is impossible for the seller to know at the time the bonds are proposed the exact rate of interest at which they will ultimately be sold. The approximation can only be projected by the trend of the national municipal bond market which may be affected by many factors which can never be anticipated. What then is the status of the bonds should it develop that it is necessary to levy and collect a greater sum than $160,000 for annual debt service? Should the city be required to make another prophecy as to future trends and start at the beginning by calling another election, or should we face realities and treat the proposing ordinance as a substantial compliance with the statute if the amount required is reasonably close to the figure originally anticipated?

The statute contemplates that the voters shall be given such information as will enable them to understand the issue upon which they are voting. This information includes: (1) the date of the bonds; (2) the total amount to be issued; (3) the purpose for which the funds are to be expended; (4) the period of time required for payment; (5) the maximum rate of interest they shall bear; and (6) the amount of taxes to be levied annually for the payment of interest and to provide for retirement. Items one, two, three, and four are not subject to variable factors which might require a change between the time of proposing and selling the bonds. Items five and six may be affected by events occurring after the proposal and before the sale of the bonds. We think the statute was intended to require that information given by the proposing ordinance should be accurate. However, so far as items five and six are concerned, accuracy is measured by conditions at the time of the adoption of the proposing ordinance rather than conditions several months or a year hence.

Should we adopt the view that the sum stated in the proposing ordinance is the absolute maximum which might be provided for the retirement of the bonds, we would encourage overstatements. The result, we think, would be more substantial inaccuracy than is reached by a fair estimate based on existing conditions.

Here it does not appear that there is any likelihood that the bonds when sold will exceed the maximum interest rate of 3% provided by the proposing ordinance, and it is unnecessary to decide at this time whether or not the interest rate submitted to the voters may be exceeded. On the question of exceeding the estimated annual tax for the retirement of the bonds, we conclude that inasmuch as the amount provided by the proposing ordinance was an accurate statement based upon conditions at the time of its enactment the validity of the bonds is not affected if subsequent conditions make it necessary to exceed the original estimate if there is no substantial disproportion between the sum actually required and the amount originally proposed. In this case, it is conceded that the figure of $160,000 represented an accurate estimate of the sum required for retirement and interest as of the date of the adoption of the original ordinance.

In determining what might be considered as a reasonable difference between the two figures, it is difficult to establish a definite rule applicable to all cases. In Kern v. City of Mt. Sterling, 233 Ky. 156, 25 S.W.2d 41, the amount required for debt service on bonds computed on the interest rate at which the bonds were finally sold exceeded by 5% the amount originally anticipated by the proposing ordinance. That excess was not considered as substantial and the validity of the bonds was upheld. We think here that the validity of the bonds will not be affected if the amount required for the annual debt service does not exceed the sum of $160,000 by more than 5%.

For the reasons indicated, the judgment is reversed with directions to enter a judgment approving the proposed bond issue and authorizing their sale.