Edgar **DIXON, Individually, et al.,**
**Appellants,**

v.

**COUNTY OF ELLIOTT, Kentucky, et al.,**
**Appellees.**

Court of Appeals of Kentucky.

May 25, 1962.

W. E. Mobley, Sandy Hook, for appellants.

Wm. R. Redwine, Sandy Hook, Joseph R. Rubin, Louisville, for appellees.

STANLEY, Commissioner.

This taxpayer's representative action challenges the proposal of Elliott County to issue $100,000 of bonds to finance the erection of a courthouse and complete the construction of a jail.

The judgment approved the proposed bonds to be issued in accordance with the fiscal court's orders and terms, which contained the condition that the bonds would not be issued unless and until they shall have been approved by the County Debt Commission and the State Local Finance Officer, as required by KRS 66.280–66.390.

The fiscal court on August 26, 1960, adopted a resolution declaring an emergency that required the incurrence of a debt of $100,000, and proposing the issuance of 25-year bonds and the levy of a special tax to pay the interest thereon and create a sinking fund for payment of the principal. The order provided for a referendum on the question of issuing the bonds to be submitted at the November, 1960, election. At that election 1,692 votes were cast in favor of the bonds and 511 against them. This was within the requirement of § 157 of the Constitution that two-thirds of the voters assent. The election was never questioned.

Approximately one-half of the proposed bonds is within the ordinary maximum indebtedness permitted by § 158 of the Constitution, which is 2% of the value of the taxable property in the county. The authority to issue bonds for the other half exists under the exception that there is an "emergency" and "the public health or safety" requires the enlargement of the percentage or the additional indebtedness.

In December, 1957, the Elliott County courthouse and jail were destroyed by fire. All furnishings and equipment and many of the county records were lost. The county collected $50,000 insurance on the courthouse. More than $20,000 of the proceeds were expended in the purchase of new equipment and some record books and in paying rent of a makeshift courtroom and county offices. The balance was used to build a jail, but there was not enough for heating facilities. It is proposed to provide

a system for heating both the jail and the courthouse out of the proceeds of the bonds.

■ Since the fire the county has improvised a courtroom in a rented basement of a theatre building. The room is 30 x 50 feet. Two small jury rooms have been partitioned off, but they are inadequate in several particulars, one of which is the practical absence of secrecy of the proceedings therein. The ventilation and lighting are poor and lavatory facilities deplorably lacking. These conditions, of course, are unhealthful and hazardous. The county offices are housed in a converted storeroom about three blocks from the courtroom. There is no vault for the protection of the records, and the conditions as to ventilation and other facilities are the same as for the courtroom. These bad conditions are graphically described by witnesses and shown in photographs. The county has been paying approximately $3,000 a year in rentals out of the regular 50¢ tax levy. This has deprived the county of funds which are vitally needed for other purposes.

The estimate of the cost of a plain building according to plans which have been submitted to the fiscal court, is $99,857.00. This is the minimum requirement, and a structure costing less would be inadequate and unserviceable.

The above is a summary of the circuit court's findings of fact. They are fully sustained by the evidence.

■ The plaintiff recognizes the factual conditions but claims the present facilities are adequate and good enough, and that there is no emergency requiring that the maximum percentage of indebtedness should be exceeded.

On the question of emergency, Magoffin County v. Rigsby, Ky., 303 S.W.2d 545, is decisive. The neighboring Magoffin County courthouse and jail were burned a few months before Elliott County lost its facilities by fire. On a test of the proposition to issue $300,000 in bonds for building a court-

house and jail, the very question we have here was before the court. We commented upon the imperative need of the people under such conditions and concluded without difficulty that they created an emergency within the meaning of § 158 of the Constitution; hence, the issuance of bonds, when and if approved by two-thirds majority of the voters, would be a legal indebtedness and authorize the necessary special tax levy.

In Rodgers v. Crittenden County, Ky., 337 S.W.2d 728, we approved bonds exceeding the county's debt limit and the extra tax levy to provide a new courthouse in place of an old one which had become so dilapidated as to be hazardous.

■ It is clear, we think, that the terms of §§ 157 and 158 of the Constitution are met and the special tax levy is authorized by § 159.

The preliminary order of the Elliott County fiscal court, the notice of the referendum election and the question submitted on the ballots all stated that the amount of the bonds should not exceed $100,000.

■ In a postelection order of September 16, 1961, the fiscal court confirmed its previous proceedings and the result of the referendum election. The order provided in detail for the issuance and sale of the bonds "in the principal sum of $100,000" bearing interest at a rate to be determined at the time of the sale not to exceed 6% per annum. In listing the maturities of the several bonds, the interest was computed "on a tentatively anticipated interest rate of 4¾% per annum." The order provided for a sinking fund and the levy of an annual tax in whatever amount should be necessary to meet the obligations.

A critical provision of the order is that which directed the advertisement and sale of the bonds on sealed, competitive bids "upon such terms and conditions as the Fiscal Court may in its discretion, just prior to the sale, determine at that time to be advantageous in the light of existing market

conditions, provided that bidders shall be required to bid not less than par plus such reasonable minimum premium, if any, as the Fiscal Court may determine to be advantageous at the time of such sale, in order to provide for expenses in connection with the validation, printing, advertisement and issuance of said bonds."

In Bell v. Board of Education of Barren County School District, Ky., 343 S.W.2d 804, we recognized that part of the proceeds of municipal bonds may be applied to the payment of reasonable expenses, but the court disapproved a plan which required that funding bonds should be sold at a premium which would be used for that purpose. In that case the premium had been definitely fixed at $15 per bond while here the premium had not been determined at the time of the judgment. In both cases competition in the bidding for the bonds rested on the rate of interest to be paid, i. e., the sale would be made to the bidder offering the lowest rate of interest.

We held in the Bell case that as the higher rate of interest would be paid out of the special tax levy, the scheme was equivalent to increasing the amount which the taxpayers would ultimately have to pay. The requirement in the present case must be likewise regarded. The authority derived from the vote of the people to issue $100,000 in bonds carried the presumption or necessary implication they would be offered for sale at par value, that is $1,000 in money for a $1,000 bond. The people could well suppose that the rate of interest would be computed on that principal and on no greater sum. As pointed out in the Bell case, it is not to be supposed that a bidder will offer the same or a lower rate of interest on a $1,000 bond when he will have to pay more than that for it. Of course, if bids were to be on bonds to bear a definite rate of interest, the competition would be based upon the principal—par or more or less. But in this kind of proposal the rate of interest is itself the basic factor in the competition. The fiscal court was without right

to change materially the terms or conditions of the proposition voted upon. Percival v. City of Covington, 191 Ky. 337, 230 S.W. 300; Reynolds v. Bracken County, 192 Ky. 180, 232 S.W. 634; Riddell v. Boone County, 183 Ky. 77, 208 S.W. 323.

The appellees argue that the holding of the Bell case should be overruled or interpreted as applying only to funding bonds or held inapplicable here because the proceedings were begun before the decision in that case.

The decisions concerned with the sale of municipal bonds have had to do with questions arising from the sale below par. Some of them were based upon statutes. Hunter v. City of Louisville, 208 Ky. 562, 271 S.W. 690; Duff v. Knott County, 238 Ky. 71, 36 S.W.2d 870; Jones, Bonds and Bond Securities, § 366; 64 C.J.S. Municipal Corporations § 1932; 43 Am.Jur., Public Securities and Obligations, § 131, et seq. Our case of Bell v. Board of Education of Barren County School District, supra, Ky., 343 S.W.2d 804, seems to be a case of first impression. Upon reconsideration of the principle laid down we continue of the opinion that it is sound and should not be overruled.

We see no basic difference in this respect between funding bonds and original obligations. We think the principle applicable to both classes of bonds.

This case is not of a character which justifies declaring a prospective effect of the opinion, as we have done where rights had become fixed upon the faith of previous opinions holding to the contrary; in fact, the judgment in this case was rendered nearly a year after the opinion in Bell v. Board of Education of Barren County School District, supra.

The judgment is affirmed except insofar as it approves the offer of the bonds for sale at a premium or for more than their par value. To that extent it is reversed.

Affirmed in part, reversed in part.