Mr. Aldine Feagle Chairman Columbia County Board of County Commissioners Post Office Drawer 1529 Lake City, Florida 32055
Dear Mr. Feagle:
This is in response to your request for an opinion on substantially the following questions:
 (1) MAY THE BOARD OF COUNTY COMMISSIONERS OF COLUMBIA COUNTY, IN LIGHT OF s 336.021, F.S., AND THE ASSOCIATED COUNTY REFERENDUM HELD ON NOVEMBER 4, 1980, EXPEND THE TAXES COLLECTED FROM THE ADDITIONAL ONE CENT MOTOR AND SPECIAL FUEL TAX ON THE CONSTRUCTION AND RECONSTRUCTION OF COUNTY ROADS ON A PAY-AS-YOU-GO BASIS, RATHER THAN USING THEM TO FUND A BOND ISSUE FOR THESE PURPOSES?
 (2) IF USE OF THESE FUNDS IS NOT RESTRICTED TO FUNDING THIS BOND ISSUE, WHAT ACTION MUST THE COMMISSION TAKE TO BE PERMITTED TO USE THESE FUNDS FOR PAY-AS-YOU-GO ROAD CONSTRUCTION PROJECTS?
Your letter of inquiry states that on November 4, 1980, the Board of County Commissioners held a referendum election during the general election for the purpose of enacting the additional one cent motor and special fuel tax within Columbia County as provided in s 336.021, F.S.
Your inquiry also notes that the tax has been collected and held by the board pending the development of a revenue bond issue for road construction. When bids were received on the proposed bond issue, the proposed interest costs were much greater than originally anticipated, and the board believes it is not in the public interest to follow through with a bond issue at this time. Rather, due to the favorable road construction cost factors being experienced currently, you state that the board would prefer to let certain road improvement contracts on a pay-as-you-go basis using the presently accumulated funds, and reevaluate the bond issue at some time in the future when interest rates are more favorable. However, you also note that the board's consultants have indicated to you that these special funds are restricted for use only to fund a bond issue due to the fact that such wording is contained in the referendum question.
For the following reasons, your first question is answered in the negative. The referendum question, passed by a majority of voters, was on the ballot as follows:
 Columbia County shall impose, in addition to all other fuel taxes presently required by law, a one (1 cents) cent tax
upon every gallon of motor fuel and special fuel sold in Columbia County and taxed under the provisions of Chapter 206, Florida Statutes, said tax to be imposed for a period of fifteen (15) years and the revenues from said tax to be pledged to retire a bond issue, the proceeds of which said bond issue shall be immediately employed to construct and reconstruct an adequate roadway system in Columbia County, Florida. (e.s.)
Approval of this tax by referendum is an express requirement of s336.021, F.S., which provides in pertinent part:
 (1) Any county in the state may, in the discretion of its governing body and subject to a referendum, impose, in addition to all other taxes required by law, a 1-cent tax upon every gallon of motor fuel and special fuel sold in such county and taxed under the provisions of chapter 206, for the purpose of paying the costs and expenses of establishing, operating, and maintaining a transportation system and related facilities and the cost of acquisition, construction, reconstruction, and maintenance of roads and streets. The governing body of the county may provide that the referendum be worded to limit the number of years such tax will remain in effect. (e.s.)
Columbia County Ordinance No. 81-2 was adopted on May 26, 1981, to implement the bond issue funded by the s 336.021 tax levy which was approved by the voters on November 4, 1980. The ordinance recognizes in sections 1(2) and 2(2) that it is the bond proceeds that will pay the `cost of project' and that the bonds, in turn, will be payable from, inter alia, the ninth cent gas tax. Seealso, sections 5(1) and (2) and 6(2) of the ordinance. Section 7 of the ordinance specifies that all moneys received pursuant to the ordinance, whether from the sale of bonds or as revenues, are trust funds to be held and applied solely as provided therein. The referendum question set forth above specifies that the revenues from the ninth cent gas tax are `to be pledged to retire a bond issue, the proceeds of which said bond issue shall be immediatelyemployed to construct and reconstruct an adequate roadway system . . . .' (e.s.) Language contained in the referendum question as it appeared on the ballot indicates that the voters contemplated immediate construction and reconstruction of a county wide roadway system and that such work was to be performed with expedition throughout the county.
By way of analogy, it is a general principle of statutory construction that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius. E.g., Thayer v. State, 335 So.2d 815 (Fla. 1976). Compare, AGO 068-76 (in which my predecessor in office concluded, in the case of a special act levying a recreational tax, effective only after approval by the voters in a county-wide referendum, that `expenditure of the moneys realized from the tax imposition is limited to those purposes expressly enumerated in the act, of which the voters were expressly aware at the time of their approval vote in the referendum election.'). That opinion relief on Oven v. Ausley,143 So. 588 (Fla. 1932), in which the Florida Supreme Court set forth the rule that when funds are raised by taxation for one purpose, they cannot be diverted to some other purpose without legislative authority and that such funds comprise a trust fund in the hands of the legal custodians. Compare, AGO 067-41 (concluding that funds derived from the issuance of certain school bonds could not be diverted to other purposes, and citing Miami Bank and Trust Co. v. Bd. of Pub. Inst. for Broward County, 80 So. 307 [Fla. 1918], for the proposition that funds raised for a particular school purpose may not be diverted to any other purpose until the purpose for which such funds were raised has been accomplished), and AGO 049-129, March 24, 1949, Biennial Report of the Attorney General, 1949-1950, p. 292 (concluding that funds derived from the issuance of school bonds could only be used to build the original project for which the bonds were issued, or to redeem the bonds). Accord, Supreme Forest Woodmen Circle v. Hobe Sound Co., 189 So. 249 (Fla. 1939) (in which the Supreme Court of Florida stated the general rule that funds raised by taxation for one purpose cannot be diverted to another without legislative authority); Keefe v. Adams, 143 So. 644 (Fla. 1932) (holding that taxes collected by a city which were allocated by ordinance to pay interest on bonds could not be diverted to operating expenses); Chamberlain v. City of Tampa, 23 So. 572 (Fla. 1898) (holding that funds derived from a tax levied to pay interest on bonds issued could not be diverted to the general fund or to other public works operating funds, and that even though a city council possesses discretion to administer the city's financial affairs, this discretion does not authorize them to divert taxes, set aside for a special purpose, so long as the special purpose exists).
Judicial decisions from other jurisdictions also indicate that these tax revenues should not be directed to another purpose than that specified. Several cases have analyzed the quantity of variance that is permissible between a `referred' measure and a later implementing ordinance. Keigley v. Banch, 89 P.2d 480 (Utah 1939), held that where there is a material departure from a referred bond ordinance so as to constitute such a policy change as is not within the evident intent of the voters, then another referendum is required, and further held that a financial policy variance should be referred to the voters if it relates to matters which probably influenced the vote of the electors. In the Keigley
case, a referred ordinance authorizing bonds to finance a city electric system was later changed by the city commission to the extent, among other changes, that the payment schedule was altered from 15 years to 20 years. The court viewed this as a `financial and economic' issue that went `beyond administrative detail and into the field of legislative policy.' The court noted that `[m]any people might feel that it is preferable . . . to reduce the total interest paid thus compelling economy, rather than to extend the payments over a greater number of years. The policy of the voters relative to the means and manner of financing the proposed plant is enunciated in their legislative enactment . . . . That financial policy is departed from in the subsequent ordinance. . . . If such a change is adhered to, the voters areentitled to a referendum on the change. It goes beyondadministrative detail and into the field of legislative policy.' (e.s.) 89 P.2d at 484-486. Applying this standard to the change proposed by you from (1) funding a bond issue to enable immediate construction and reconstruction of an adequate `roadway system' to (2) a slower pay-as-you-go construction and reconstruction program, it appears that such an approach is fundamentally different from the program approved by the voters, and that it should be again referred to them by county referendum. Compare, City of Louisville v. Kesselring, 257 S.W.2d 599, at 601 (holding that a schedule of maturities variance between an ordinance calling a bond election and the ordinance enacted afterwards to implement the bond issue was not fatal and did not materially affect the taxpayers if the issuing ordinance did not change the dates of the bonds, the maximum rate of interest, or the number of years to retirement, or increase the amount of the bonds); State v. City of Miami, 41 So.2d 898 (Fla. 1949) (in which the court approved a change in the schedule of maturities, since the amount and purpose of the bonds remained the same); Dixon v. County of Elliott, 357 S.W.2d 852, 855 (Ken. Ct. App. 1962) (disallowing a material change in the terms or conditions of the bond proposition voted on); cf., State v. City of West Palm Beach,174 So. 334, 338 (Fla. 1937), for an example of an immaterial variance, and compare, Cason v. Watkins, 73 So. 742 (Fla. 1917) (holding that after a referendum approval of bonds to construct roads, the county commission had discretion to make interest payable annually or at maturity).
However, my research has failed to disclose any Florida decisional or statutory law, other than s 336.021, on this specific question. Accordingly, in the absence of any such statutory or judicial direction, I am unable to condone use of the above-described funds for any purpose other than as expressly provided in the referendum question as approved by the voters on November 4, 1980. Therefore, in view of the express language of the referendum question, I must conclude that the Board of County Commissioners of Columbia County may not use the funds derived from the additional 1-cent motor fuel tax imposed under s 336.021, F.S., for construction and reconstruction of a county roadway system on a pay-as-you-go basis, rather than to fund a bond issue to enable the immediate construction and reconstruction of such a roadway system. Further, I would suggest that you hold another referendum if you still desire to use the pay-as-you-go method. In view of the negative response to your first question, it is unnecessary to respond to your second question.
In summary, until legislatively or judicially determined otherwise, it is my opinion that the Board of County Commissioners of Columbia County may not use, on a pay-as-you-go basis, taxes collected pursuant to s 336.021, F.S., following an associated county referendum required by s 336.021, which specified a bond issue to immediately fund construction and reconstruction of an adequate roadway system in the county as the specific purpose for which the additional tax would be spent.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General